UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　Plaintiff,<br>vs.<br>GREG STEPHEN,<br>　　Defendant. | No. CR 18-31<br><br>MOTION TO RECONSIDER |

COMES NOW Defendant and requests that the Court reconsider its ruling, Document 55, filed on October 4, 2018, denying his motion to suppress and motion to dismiss. In particular, Defendant requests that the Court reconsider the part of ruling denying the motion to suppress relating to the police seizing a USB camera device without a warrant and keeping it without obtaining a warrant for about 48 hours or more. This is part C of the Court's ruling.

Fed. R. Crim. P. 51(a) provides that exceptions to rulings or orders of the Court are unnecessary. However, there appears to be no rule of criminal procedure that would prevent a defendant from seeking reconsideration of a ruling of the Court.

1

**TABLE OF CONTENTS**

I. Warrantless seizure and retention of the USB camera device – Mr. Stephen's expectation of privacy was not extinguished when Ellison took the device from his home, the private search exception does not apply to private dwellings, and the police took advantage of Ellison's physical intrusion on his home to acquire the device ................................................................................................................3

   A. Mr. Stephen's expectation of privacy was not extinguished when Ellison took the USB camera device from his home ..........................................................3

   B. The private search exception does not apply to private dwellings ...............4

   C. The prolonged seizure without a warrant and without exigent circumstances violated the Fourth Amendment because of the absence of diligence in seeking a warrant ................................................................................5

II. Conclusion..................................................................................................8

Mr. Ellison took the device from Mr. Stephen's home without seeking Mr. Stephen's permission or telling him that he had taken the device, and then took the device to his home where he opened and viewed the files on the device. Thereafter Ellison called the Monticello police chief, Smith, who directed him to bring the device to the police department, knowing that Ellison had no right, license or title to the device and that Ellison had removed the device from Stephen's home.

# I. Warrantless seizure and retention of the USB camera device – Mr. Stephen's expectation of privacy was not extinguished when Ellison took the device from his home, the private search exception does not apply to private dwellings, and the police took advantage of Ellison's physical intrusion on his home to acquire the device

### A. Mr. Stephen's expectation of privacy was not extinguished when Ellison took the USB camera device from his home

The Court used an "expectation of privacy" analysis to conclude that no warrant was required to seize the device or to hold it without obtaining a warrant. Ruling, page 16 et. seq. Mr. Stephen asks the Court to reconsider its ruling and find, first, that Mr. Stephen's expectation of privacy in the contents of the device were not extinguished when Ellison exceeded the scope of his permission to be in Mr. Stephen's home by taking the device from the home. Ellison had permission to be at the home only to do remodeling work. He had no permission to take Mr. Stephen's belongings from the home.

In the *Jacobson* case, cited by the Court, the defendant had voluntarily relinquished control over his property by turning it over to a third party. No such voluntary relinquishment occurred in Mr. Stephen's case when Ellison removed it from Stephen's home. Chief Smith was aware of these circumstances but nonetheless directed Stephen to bring the device to the police department the following morning, which he did. By taking possession of the device, the police

3

seized it, and this seizure without a warrant or exigent circumstances was unreasonable. *See Carpenter v. United States*, 138 S. Ct. 2206, 2212-2221 (2018), the Court held that the Government's acquisition of Carpenter's cell-site records from a third party was a Fourth Amendment search. If there was some urgency for the police to seize the device, the Chief would not have directed Ellison to wait until the next day to bring it to the police.

### B. The private search exception does not apply to private dwellings

Moreover, the USB camera device came from the defendant's home and was reported by Ellison to have recorded things that occurred in the home. Therefore, a warrantless search of the USB camera device was tantamount to a warrantless search of Mr. Steven's home. Courts have refused to extend the private-search exception to private dwellings. *See United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997) (held: "[T]his Court is unwilling to extend the holding in *Jacobsen* to cases involving private searches of residences."); *accord*, *State v. Wright*, 114 A.3d 340, 352 (N.J. 2015).

That the private search doctrine is inapplicable to private is supported by the recent *Jones* and *Jardines* cases, where the Supreme Court relied upon the Fourth Amendment's guaranty of being free from warrantless government intrusions upon private property to find that evidence should be suppressed. In *Florida v. Jardines*,

4

133 S. Ct. 1409, 1414 (2013), the Supreme Court held that using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a "search" within the meaning of the Fourth Amendment "when the Government does engage in [a] physical intrusion of a constitutionally protected area." Likewise, in *United States v. Jones,* 132 S. Ct. 945, 949 (2012), the Court held that the attachment of a Global-Positioning-System (GPS) tracking device to an individual's vehicle, and subsequent use of that device to monitor the vehicle's movements on public streets, constituted a search or seizure within the meaning of the Fourth Amendment because "the Government physically occupied private property for the purpose of obtaining information."

When Chief Smith seized the device that he knew had been taken from Mr. Stephen's home without permission, the Government ratified, endorsed, and became privy and party to Ellison's trespass and theft from Mr. Stephen's residence and thereby acted contrary to the protections afforded to Mr. Stephen by the Fourth Amendment as interpreted in *Jones* and *Jardines*.

### C. The prolonged seizure without a warrant and without exigent circumstances violated the Fourth Amendment because of the absence of diligence in seeking a warrant

Even if the seizure of the device, when the Chief directed Ellison to deliver the device and then took custody of it, did not violate Mr. Stephens expectation of

5

privacy and the protections afforded by the Fourth Amendment to be free from unreasonable searches and seizures, the Chief retained the device for more than 48 hours after Ellison delivered the device to the police department. There were no exigent circumstances making this continued seizure reasonable.

The Court found that it was reasonable for the DCI not to seek a warrant to seize and search the device because it took a while to assign an agent to the case. Ruling, page 18. Mr. Stephen does not concede that this reason for delaying seeking a warrant is adequate. *See United States v. Place*, 462 U.S. 696, 709 (1983), where the Court held that the length of the detention must be considered in light of the amount of time reasonably required for a <u>diligent</u> inspector to complete an investigation into the package being held. Furthermore, Mr. Stephen asks the Court to reconsider its ruling because Chief Smith did not have <u>any</u> reason for not seeking a warrant after seizing it. The Chief testified that he knows how to request and obtain warrants and has done so many times. There was testimony by Ellison that the Chief told him that he would not undertake any action on the device until after Ellison got paid by Stephen for his remodeling job. *Compare United States v. Gomez*, 312 F.3d 920, 925-26 (8th Cir. 2002). In *Gomez*, the Court found that because the seizure of a suspicious package occurred in the wee hours of the morning in Indianapolis, soon after the package arrived at the Express Mail hub, and because the sender's address was in California, there was no practical way to

6

check that address until approximately eight hours after the package arrived. Once that step was taken, Wendy, a drug-detection dog is was called in. When she alerted to the package, there was probable cause to support the issuance of a search warrant, at which time the warrant was requested. The Court in *Gomez* concluded that on these facts, the agent who seized the package, "acted as expeditiously as the circumstances would allow."

In Mr. Stephen's case, Chief Smith failed to obtain a warrant as "expeditiously as the circumstances allowed" and therefore, the continued detention of the device after it was delivered to the police department violated the Fourth Amendment.

*United States v. Johns*, 469 U.S. 478, 484-86 (1985), cited by the Court at page 18, that a three-day delay in obtaining a warrant after seizure did not violate the Fourth Amendment, is inapposite. The *Johns* case involved marijuana in containers that that were removed from a vehicle after the vehicle was lawfully stopped and searched three days later. The Court in *Johns* concluded that because the containers in the vehicle could have been searched immediately based on the vehicle-search doctrine, it follows that a three-day delay in searching the containers did not violate the Constitution. Mr. Stephens case does not involve a

7

lawfully stopped vehicle and the exception to the Fourth Amendment associated with that circumstance.

## II. Conclusion

For the reasons and upon the authority cited herein, Mr. Stephen requests that the Court reconsider its ruling denying his motion to suppress.

Respectfully submitted,



MARK C. MEYER AT0005269
425 2nd Street SE, Suite 1250
Cedar Rapids, Iowa 52401
(319) 365-7529
legalmail@markcmeyer.com

CO-COUNSEL FOR DEFENDANT

**CERTIFICATE OF SERVICE**

A copy of this document was served by ☐ mail, ☐ facsimile, ☐ hand-delivery ☒ electronic filing on this 10/12/2018 upon all counsel of record in this case.

8