IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 1: 18-cr-31 |
| | ) | |
| v. | ) | PLEA AGREEMENT |
| | ) | (Conditional Plea) |
| GREGORY STEPHEN, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America (also referred to as "the Government") and the Defendant, GREGORY STEPHEN, and Defendant's attorney, enter into this Plea Agreement.

**A.　CHARGES**

1.　*Subject Offenses.*　Defendant will plead guilty to Counts 1 through 7, inclusive, of the Superseding Indictment. Counts 1, 2, 3, 4, and 5 charge the defendant with Sexual Exploitation of minor – Production of Child Pornography, violations of Title 18, United States Code, Section 2251(a) & (e). Each of these five counts involves a different minor victim. Count 6 charges possession of Child Pornography a violation of Title 18, United States Code, Section 2252(a)(4)(B). Count 7 charges Transporting Child Pornography in violation of Title 18, United States Code, Section 2252(a)(1) and (b)(2). In addition, Stephen will forfeit all devices used to commit criminal offenses including any devices used to record or store visual depictions of nude minors.

2.　*No Further Prosecution.*　The Government agrees that Defendant will not be charged in the Northern District of Iowa with any other federal criminal offense arising

1
Government Exhibit 1 - Plea
Case 18-CR-31

from or directly relating to this investigation. This paragraph and this Plea Agreement do not apply to any criminal act occurring after the date of this agreement, or any other crime of violence not known by the Government.

## B.    MAXIMUM PENALTIES

3.    *Maximum and Mandatory Minimum Punishment.* Defendant understands that the crimes to which he is pleading guilty in Counts 1, 2, 3, 4, and 5 each carries a mandatory minimum sentence of fifteen (15) years in prison and a maximum sentence of thirty (30) years in prison; a maximum fine of $250,000.00 per count; and a term of supervised release of life. Defendant understands that the crimes to which he is pleading guilty in Count 6 carries a maximum sentence of ten (10) years in prison; a maximum fine of $250,000.00; and a term of supervised release of life. Defendant understands that the crimes to which he is pleading guilty in Count 7 each carries a mandatory minimum sentence of five (5) years in prison and a maximum sentence of twenty (20) years in prison; a maximum fine of $250,000.00; and a term of supervised release of life. A mandatory special assessment of $100 per count also must be imposed by the sentencing court. Defendant understands that the Court may not impose a sentence less than the mandatory minimum sentence. Defendant understands that the Court may impose consecutive sentences. No one has promised Defendant that he will be eligible for a sentence of less than the mandatory minimum sentence. No one has promised Defendant that he will not receive a maximum sentence on each count to be served consecutively.

2

4. *Supervised Release--Explained.* Defendant understands that, during any period of supervised release or probation, Defendant will be under supervision and will be required to comply with certain conditions. If Defendant were to violate a condition of supervised release, Defendant could be sentenced up to 5 years in prison, without any credit for time previously served.

5. *Detention.* Pursuant to the Mandatory Detention for Offenders Convicted of Serious Crimes Act (18 U.S.C. § 3143), Defendant agrees to remain in custody following the completion of the entry of Defendant's guilty plea to await the imposition of sentence.

## C. NATURE OF THE OFFENSE -- FACTUAL BASIS

6. *Elements of Counts 1, 2, 3, 4, and 5 Understood.* Defendant understands that to prove the offenses alleged in Counts 1, 2, 3 , 4, and 5, which is Sexual Exploitation of minor – Production of Child Pornography, violations of Title 18, United States Code, Section 2251(a) & (e), the Government would be required to prove beyond a reasonable doubt the following elements:

(a) on or between the dates identified in the superseding indictment, victim referred to in the particular charge was under the age of eighteen years;

(b) the defendant knowingly employed, used, persuaded, induced, or enticed the victim to engage in sexually explicit conduct;

(c) the defendant did so for the purpose of producing one or more visual depictions of such conduct; and

(d) that visual depictions of such conduct were produced using materials that had been mailed, shipped, or transported across state lines by any means.

7. *Elements of Count 6 Understood.* Defendant understands that to prove the offense alleged in Count 6 which is Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252(a)(4)(B), the Government would be required to prove beyond a reasonable doubt the following elements:

(a) on the date identified in the superseding indictment, the defendant knowingly possessed one or more matters which contained a visual depiction of a minor engaged in sexually explicit conduct;

(b) that the defendant knew that the visual depiction(s) were of minors engaging in sexually explicit conduct;

(c) that the visual depiction was produced using materials which had been mailed, shipped, or transported using any means or facility of interstate commerce.

8. *Elements of Count 7 Understood.* Defendant understands that to prove the offense alleged in Count 7 which is Transportation of Child Pornography, in violation of Title 18, United States Code, Section 2252(a)(1), the Government would be required to prove beyond a reasonable doubt the following elements:

(a) The defendant knowingly transported or shipped the identified hardware and data files which contained a visual depiction of a minor engaged in sexually explicit conduct;

(b) The production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, and the visual depiction was of such conduct;

(c) The defendant knew that the visual depiction involved the use of a minor engaging in sexually explicit conduct, and

(d) The defendant shipped or transported the identified hardware and data files in interstate commerce by personally carrying the device containing the visual depictions across state lines from Illinois to Iowa.

4

9. *Elements Admitted.* As a factual basis for Defendant's pleas of guilty, Defendant admits the following:

(a) On Wednesday, February 21, 2018, law enforcement officers conducted a search of a hidden camera device that was taken from the defendant's residence. The search revealed that the defendant (Stephen) had used this device to record secretly several nude minor boys in hotel rooms in Lombard, Illinois and Ankeny, Iowa. Stephen employed the device in January of 2018 in Lombard, Illinois and then transported the device from Illinois to Iowa after using it to secretly record the boys. Stephen had invited the boys, and then escorted the boys, to attend basketball games or play in basketball tournaments. Stephen placed the recording device in hotel bathrooms, pointed towards the shower area, so that it recorded minors coming in and out of the shower exposing their genitals. These recordings produced by Stephen involve minors engaged in sexually explicit conduct including the lascivious display of the genitals of the minors. None of the boys were aware that they were being recorded.

(b) On February 22, 2018, law enforcement officers searched two residences owned or used by Stephen; one residence was Stephen's primary residence in Monticello, Iowa and the other was a "lake house" in Delhi, Iowa. From the Monticello residence, officers seized eleven (11) electronic devices that had been shipped and transported in interstate commerce, including a LaCie Porsche Design external hard drive (LaCie Hard Drive), found in Stephen's office. Three additional covert recording devices similar in style to the one used by Stephen in hotel rooms in Lombard, Illinois and Ankeny, Iowa were found as well as a covert recording device designed to look like, and operate as, a mountable bath towel hook. These devices all belonged to Stephen.

(c) From the Delhi residence, officers seized 22 electronic devices that had been shipped and transported in interstate commerce including a covert recording device designed to look like a smoke detector. This device was in the bathroom of the residence. It was plugged in to an electrical outlet and charging. The mount for the device was located directly above the toilet.

(d) A review of the recovered items revealed that from 2008 or earlier, Stephen had access to minors from age 9 to age 17 through basketball programs commonly referred to as Barnstormers, Mavericks, or by other team names. Through Stephen's connection to these programs as a coach and administrator, Stephen had the personal information of many of the minors, and some of their minor friends and acquaintances. In addition, Stephen traveled to various sporting events, including basketball games and tournaments, with the minors and many times had the minors stay in hotel rooms with him and sleep in the same bed with him.

(e) The LaCie Hard Drive was found to contain more than 400 electronic file folders with titles in the last and then first names of the different minor boys hereinafter referred to as victims. Approximately 400 of these file folders contain visual depictions of nude minor males displaying their genitalia and many involve masturbation by the minor boys. Victims include basketball players (and friends of players) from as recent as 2018 and former basketball players and their friends from past seasons going back several years and also includes minors involved in other sports.

(f) There were three different genre of visual depictions found in the folders on the LaCie hard drive: (1) nude minor males secretly recorded in various bathrooms (such as those discussed above); (2) visual depictions, including still images and videos, of minor males taken by the minors themselves and depicting the minors masturbating and/or displaying their penises - these minors were persuaded, induced, or enticed by Stephen to produce these visual depictions; and (3) visual depictions produced by Stephen of minor males unconscious with their pants pulled down and their genitals exposed. In some of these depictions, Stephen recorded himself touching the genitals of the unconscious victims. Some of the file folders have only one type of visual depiction whereas some have all three types.

(g) In addition to locating file folders bearing the names of minor males, officers located on the LaCie Hard Drive two file folders with the file names "Kylie Leonard" (Leonard) and "Mikayla Timm" (Timm). These file folders each contained photos (nude and clothed) of teenaged females, as well as video of what appears to be female teenager masturbating with no face visible. Stephen assumed the identity of these two girls and another young female named Calynn to initiate contact with the boys on social media or otherwise. Stephen established FACEBOOK and Snapchat profiles using the identities of these females and used these profiles to contact minor boys. Once contact was made, Stephen used the female personae to persuade, induce, and entice the minor boys to provide sexually explicit images of themselves. For instance, Stephen posed as a teenaged girl, made contact, and then offered to exchange nude images with the victims. As a female teenager, Stephen suggested the types of sexually explicit image the victim should produce and then recorded and saved the pornographic images the minors sent to him. Unbeknownst to the victims, Stephen used a software application to record live transmissions made by the minor boys.

(h) Stephen also saved chats between Leonard and/or Timm and some of the victims as well as account log-in information for the Leonard and Timm profiles.

(i) With respect to Victim 1, who was either 14 or 15 years old at the time, whose status as a minor was known to Stephen, and who is referred to in Count 1, Stephen persuaded, induced, and enticed Victim 1 to produce visual depictions of Victim

6

1 displaying his erect penis. Stephen admits that the visual depictions are of sexually explicit conduct and were produced using materials that had traveled across state lines.

(j) With respect to Victim 2, who was 14 to 17 years old at the time, whose status as a minor was known to Stephen, and who is referred to in Count 2, Stephen persuaded, induced, and enticed Victim 2 to produce visual depictions of Victim 2 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct and were produced using materials that had traveled across state lines.

(k) With respect to Victim 3, who was 11 or 12 years old at the time, whose status as a minor was known to Stephen, and who is referred to in Count 3, Stephen persuaded, induced, and enticed Victim 3 to produce visual depictions of Victim 3 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct and were produced using materials that had traveled across state lines. In addition, Victim 3 traveled to basketball tournaments and games with Stephen on several occasions, and went to Stephen's house in Delhi, Iowa. On the LaCie Hard Drive, officers found a visual depiction with a date stamp in August of 2017, that shows Stephen with his mouth on or near Victim 3's penis while Stephen touched Victim 3's penis with his hand. This visual depiction was produced by Stephen, depicts sexually explicit conduct, and was produced using materials that had been shipped in interstate commerce. Prior to producing the visual depiction, Stephen gave Victim 3 medication which made him drowsy.

(l) With respect to Victim 4, who was 13 or 14 years old at the time, whose status as a minor was known to Stephen, and who is referred to in Count 4, Stephen persuaded, induced, and enticed Victim 4 to produce visual depictions of Victim 4 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct and were produced using materials that had traveled across state lines.

(m) With respect to Victim 5, who was 15 years old at the time, whose status as a minor was known to Stephen, and who is referred to in Count 5, Stephen persuaded, induced, and enticed Victim 5 to produce visual depictions of Victim 5 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct and were produced using materials that had traveled across state lines.

(n) Stephen admits that he produced, or caused the production of, all of the images of the victims (minor boys) depicted in the LaCie Hard Drive.

10. *Truthfulness of Factual Basis.* Defendant acknowledges that the above statements are true. Defendant understands that, during the change of plea hearing, the judge and the prosecutor may ask Defendant questions under oath about the offense to which Defendant is pleading guilty, in the presence of Defendant's attorney. Defendant understands that Defendant must answer these questions truthfully, and that Defendant can be prosecuted for perjury if Defendant gives any false answers.

11. *Waiver of Rule 410 Rights.* The Defendant expressly waives Defendant's rights under Rule 410 of the Federal Rules of Evidence and agrees that all factual statements made in this plea agreement, including under the Elements Admitted, are admissible against the Defendant. Should Defendant fail to plead guilty pursuant to this plea agreement or move to withdraw his plea or to set aside his conviction, then these admissions may be used against Defendant in the Government's case-in-chief and otherwise, including during the continuing prosecution of this case.

12. *Venue.* Defendant agrees that venue for this case is proper for the United States District Court for the Northern District of Iowa.

**D. SENTENCING**

13. *Sentencing Guidelines.* Defendant understands that Defendant's sentence will be determined by the Court after considering the advisory United States Sentencing Guidelines, together with other factors set forth by law. The Sentencing Guidelines

8

establish a sentencing range based upon factors determined to be present in the case, which include, but are not limited to the following:

> (a) *The Base Offense Level for Sexually Exploiting a Minor by Production of Sexually Explicit Visual Material*; the parties agree that pursuant to USSG § 2G2.1(a), the Base Offense Level for Counts 1, 2, 3, 4, and 5 is 32;
>
> (b) *The ages of the victim(s)*; the offenses charged in Counts 1, 2, 3, 4, and 5 involved minors who had attained the age of twelve years but not attained the age of sixteen years, resulting in an increase by 2 levels pursuant to USSG § 2G2.1(b)(1)(B);
>
> (c) *The commission of sexual acts with minors*, the defendant admits that with respect to Victim 3, and with respect to some additional victims, he committed sexual acts and sexual contact resulting in a 2-level increase pursuant to USSG § 2G2.1(b)(2)(A) and the defendant understands that that there is evidence that, in at least one instance, he engaged in conduct described in 18 U.S.C. § 2241(b) which could result in an increase by 4 levels pursuant to USSG § 2G2.1(b)(2)(B);
>
> (d) *Supervisory control*, the defendant admits that some of the victims were in his custody, care, or supervisory control at the time some of the offenses were committed resulting in an increase by 2 levels pursuant to USSG § 2G2.1(b)(5);
>
> (e) *Use of a computer*, the defendant admits that USSG § 2G2.1(b)(6) applies to his offenses because he used a computer to persuade, induce, and entice minors to engage in sexually explicit conduct, and did otherwise solicit participation by a minor in such conduct resulting in an increase by 2 levels;
>
> (f) *Treatment of uncharged conduct*, the defendant understands that the relevant conduct in this case involves the exploitation of approximately 400 victims and that USSG Chapter Three, Part D shall be applied as if the exploitation of each minor had been contained in a separate count of conviction;
>
> (g) *The Base Offense Level for Possessing Material Involving the Sexual Exploitation of a Minor*, the parties agree that pursuant to USSG § 2G2.2(a)(1), the Base Offense Level for Count 6 is 18;

9

(h) *The Base Offense Level for Transporting Material Involving the Sexual Exploitation of a Minor,* the parties agree that pursuant to USSG § 2G2.2(a)(2), the Base Offense Level for Count 7 is 22;

(i) *Age or puberty of the victim,* the parties agree that, with respect to Count 6, some of the material involved minors under the age of 12 or prepubescent minors resulting in an increase by 2 levels pursuant to USSG § 2G2.2(b)(2);

(j) *Whether the offense involved distribution of material,* the parties agree that the defendant distributed pornographic materials to minors that was intended to persuade, induce, and entice minors to engage in prohibited sexual conduct but have reached no agreement that this results in any offense level increase;

(k) *Pattern of activity,* the defendant admits that he engaged in a pattern of activity that involved the sexual abuse and exploitation of minors resulting in an increase of 5 levels;

(l) *Use of a computer,* with respect to Counts 6 and 7, the defendant admits that he used a computer for the possession and receipt of the material, resulting in an increase of 2 levels pursuant to USSG § 2G2.2(b)(6);

(m) *Number of images,* the defendant admits that the offenses in Count 6 and 7 involved 600 or more images (each video and video-clip or similar visual depiction shall be considered to have 75 images) resulting in an increase of 5 levels pursuant to USSG § 2G2.2(b)(7)(D);

(n) *Grouping rules and calculating the combined offense level,* the parties understand that offenses charged in Counts 1, 2, 3, 4, and 5 are excluded from grouping of closely related counts, that pursuant to USSG § 3D1.4(a) to calculate combined offense level, the group with the highest offense level is assigned one unit, one additional unit is added for each group that is equally serious or from 1 to 4 levels less serious, and that pursuant to USSG § 3D1.4(b) and one-half unit is added for each group that is 5 to 8 levels less serious.

(o) *The nature and extent of Defendant's criminal history* (prior convictions), the defendant understands that his criminal history will be investigated to determine his Criminal History Category under the Federal Sentencing Guidelines; and

10

(p) *Acceptance or lack of acceptance of responsibility*, with the parties reaching no final agreement concerning whether Stephen has fully accepted responsibility by pleading guilty pursuant to this agreement.

Defendant understands that, under some circumstances, the Court may "depart" or "vary" from the Sentencing Guidelines and impose a sentence more severe or less severe than provided by the guidelines, up to the maximum in the statute of conviction for each offense including consecutive sentences for each count. Defendant has discussed the penalties and the Sentencing Guidelines with his attorneys.

14. *Acceptance of Responsibility.* The Government agrees to recommend that Defendant receive credit for acceptance of responsibility under USSG §3E1.1. The Government reserves the right to oppose a reduction under §3E1.1 if after the plea proceeding Defendant obstructs justice, fails to cooperate fully and truthfully with the United States Probation Office, attempts to withdraw Defendant's plea, falsely denies or frivolously contest relevant conduct, or otherwise engages in conduct not consistent with acceptance of responsibility. If the base offense level is 16 or above, as determined by the Court, the Government agrees that Defendant should receive a 3-level reduction, based on timely notification to the Government of Defendant's intent to plead guilty.

15. *Presentence Report.* Defendant understands that the Court may defer a decision as to whether to accept this Plea Agreement until after a Presentence Report has been prepared by the United States Probation Office, and after Defendant's attorney and the Government have had an opportunity to review and challenge the Presentence Report. The parties are free to provide all relevant information to the Probation Office

11

for use in preparing a Presentence Report.

16. *Evidence at Sentencing.* The parties may make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement. Nothing in this Plea Agreement restricts the right of Defendant or any victim to make an allocution statement, to the extent permitted under the Federal Rules of Criminal Procedure, nor does this Plea Agreement convey any rights to appear at proceedings or make statements that do not otherwise exist.

17. *Sentence to be Decided by Judge -- No Promises.* This Plea Agreement is entered pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. Defendant understands that the final sentence, including the application of the Sentencing Guidelines and any upward or downward departures, is within the sole discretion of the sentencing judge, and that the sentencing judge is not required to accept any factual or legal stipulations agreed to by the parties. Any estimate of the possible sentence to be imposed, by a defense attorney or the Government, is only a prediction, and not a promise, and is not binding. Therefore, it is uncertain at this time what Defendant's actual sentence will be.

18. *No Right to Withdraw Plea.* Defendant understands that Defendant will have no right to withdraw Defendant's plea if the sentence imposed, or the application of the Sentencing Guidelines, is other than what Defendant anticipated, or if the sentencing judge declines to follow the parties' recommendations.

## E. FINES, COSTS AND RESTITUTION

19. *Fines and Costs.* Issues relating to fines and/or costs of incarceration are not dealt with in this agreement, and the parties are free to espouse their respective positions at sentencing.

20. *Special Assessment.* Defendant agrees to pay the mandatory special assessment of $100 ($100 per count) at or before the time of sentencing, as required by 18 U.S.C. § 3013.

21. *Restitution.* Defendant understands that the court is required to order the defendant to pay restitution including the full amount of the victim's losses as determined by the court including costs incurred by any victim for--

> (a) medical services relating to physical, psychiatric, or psychological care;
>
> (b) physical and occupational therapy or rehabilitation;
>
> (c) necessary transportation, temporary housing, and child care expenses;
>
> (d) lost income;
>
> (e) attorneys' fees, as well as other costs incurred; and
>
> (f) any other losses suffered by the victim as a proximate result of the offenses.

## F. LIMITED SCOPE OF AGREEMENT

22. *Limited Scope of Agreement.* This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement. Additionally, this Plea Agreement does not preclude the Government from pursuing any civil or administrative

matters against Defendant, including, but not limited to, civil tax matters and civil forfeiture which arise from, or are related to, the facts upon which this investigation is based.

23. *Agreement Limited to Northern District of Iowa.* This Plea Agreement is limited to the United States Attorney's Office for the Southern District of Iowa serving, in this case, as the United States Attorney for the Northern District of Iowa, due to recusal, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## G. WAIVER OF TRIAL, APPEAL AND POST-CONVICTION RIGHTS

24. *Trial Rights Explained.* Defendant understands that this guilty plea waives the right to:

    (a) Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

    (b) A speedy and public trial by jury, which must unanimously find Defendant guilty before there can be a conviction;

    (c) The assistance of an attorney at all stages of trial and related proceedings, to be paid at Government expense if he cannot afford to hire an attorney;

    (d) Confront and cross-examine adverse witnesses;

    (e) Present evidence and to have witnesses testify on behalf of Defendant, including having the court issue subpoenas to compel witnesses to testify on Defendant's behalf;

    (f) Not testify or have any adverse inferences drawn from the failure to testify (although Defendant also has the right to testify, if Defendant so chooses); and

(g) If Defendant is convicted, the right to appeal, with the assistance of an attorney, to be paid at Government expense if Defendant cannot afford to hire an attorney.

25. *Limited Waiver of Appeal and Post-Conviction Review – Conditional Plea.* Defendant knowingly and expressly waives any and all rights to appeal Defendant's conviction in this case, including a waiver of all motions, defenses and objections which Defendant could assert to the charge(s) or to the court's entry of judgment against Defendant; except that both Defendant and the Government preserve the right to appeal any sentence imposed by the district court, to the extent that an appeal is authorized by law, and Defendant preserves the right to appeal the court's denial of Defendant's motion to suppress entered on October 4, 2018 (Court's Docket No. 55). Also, Defendant knowingly and expressly waives any and all rights to contest Defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255. These waivers are full and complete, except that they do not extend to the right to appeal or seek post-conviction relief based on grounds of ineffective assistance of counsel or prosecutorial misconduct.

## H. VOLUNTARINESS OF PLEA AND OPPORTUNITY TO CONSULT WITH COUNSEL

26. *Voluntariness of Plea.* Defendant represents that Defendant's decision to plead guilty is Defendant's own, voluntary decision, and that the following is true:

(a) Defendant has had a full opportunity to discuss all the facts and circumstances of this case with Defendant's attorney, and Defendant has a clear understanding of the charges and the consequences of this plea, including the maximum penalties provided by law.

15

(b) No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this written agreement.

(c) No one has threatened Defendant or his family to induce this guilty plea.

(d) Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

27. *Consultation with Attorney.* Defendant has discussed this case and this plea with Defendant's attorney and states that the following is true:

(a) Defendant states that Defendant is satisfied with the representation provided by Defendant's attorney.

(b) Defendant has no complaint about the time or attention his attorney has devoted to this case nor the advice the attorney has given.

(c) Although Defendant's attorney has given Defendant advice on this guilty plea, the decision to plead guilty is Defendant's own decision. Defendant's decision to enter this plea was made after full and careful thought, with the advice of Defendant's attorney, and with a full understanding of Defendant's rights, the facts and circumstances of the case, and the consequences of the plea.

## I. GENERAL PROVISIONS

28. *Entire Agreement.* This Plea Agreement, and any attachments, is the entire agreement between the parties. Any modifications to this Plea Agreement must be *in writing* and signed by all parties.

29. *Public Interest.* The parties state this Plea Agreement is in the public interest and it takes into account the benefit to the public of a prompt and certain disposition of the case and furnishes adequate protection to the public interest and is in keeping with the gravity of the offense and promotes respect for the law.

16

30. *Execution/Effective Date.* This Plea Agreement does not become valid and binding until executed by each of the individuals (or their designated representatives) shown below.

## J. SIGNATURES

31. *Defendant.* I have read all of this Plea Agreement and have discussed it with my attorneys. I fully understand the Plea Agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No promises have been made to me other than the promises in this Plea Agreement. I have not been threatened in any way to get me to enter into this Plea Agreement. I am satisfied with the services of my attorneys with regard to this Plea Agreement and other matters associated with this case. I am entering into this Plea Agreement and will enter my plea of guilty under this Agreement because I committed the crime to which I am pleading guilty. I know that I may ask my attorneys and the judge any questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

10/11/18
Date

*[signature]*
Gregory Stephen

32. *Defendant's Attorneys.* We have read this Plea Agreement and have discussed it in its entirety with our client. There is no Plea Agreement other than the agreement set forth in this writing. Our client fully understands this Plea Agreement. We are satisfied our client is capable of entering into this Plea Agreement, and does so

17

voluntarily of his own free will, with full knowledge of his legal rights, and without any coercion or compulsion. We have had full access to the Government's discovery materials, and we believe there is a factual basis for the plea. We concur with our client entering into this Plea Agreement and in entering a plea of guilty pursuant to the Plea Agreement.

10 12 18
Date

Mark R. Brown
Attorney for Defendant
211 - 3rd Avenue, SW
Cedar Rapids, IA 52404
Tel: (319) 862-2519
Fax: (319) 862-2529
Email: attybrown@aol.com

10-11-18
Date

Mark C. Meyer
Attorney for Defendant
425 2nd Street SE, Suite 425
Cedar Rapids, IA 52401
Tel: (319) 365-7259
Email: legalmail@markcmeyer.com

33. *United States.* The Government agrees to the terms of this Plea Agreement.

                                                  Marc Krickbaum
                                                  United States Attorney

October 18, 2018     By: _____
Date

                                                  Clifford R. Cronk III/ Amy Jennings
                                                  Assistant United States Attorneys
                                                  131 East Fourth Street, Suite 310
                                                  Davenport, Iowa   52801
                                                  Tel: (563) 449-5432
                                                  Fax: (563) 449-5433
                                                  Email: cliff.cronk@usdoj.gov
                                                               /amy.jennings2@usdoj.gov