| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　Plaintiff,<br>　　vs.<br>GREG STEPHEN,<br>　　Defendant. | No. CR 18-31<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

COMES NOW Defendant and submits the following sentencing memorandum. The sentencing hearing will occur on May 2, 2019, at 9:00 a.m. Defendant requests that the Court impose concurrent sentences of 240 months in prison on Counts 1-5 and 7 and 120 months on Count 6. He asserts that this would be the appropriate sentence upon consideration of the factors set forth in 18 U.S.C. § 3553(a).

A 240-month sentence would be a variance from the guidelines sentencing range for counts 1-5. The range for each of these counts is at or above the statutory maximum sentence of 360 months in prison, depending on this Court's rulings on how specific offense characteristics should be applied. Mr. Stephens will separately submit a memorandum stating the reasons why the court should vary from the advisory sentencing guidelines range.

**TABLE OF CONTENTS**

I. Potential Witnesses and Exhibits ............................................................... 2

　A. Witnesses ................................................................................................ 2

　B. Exhibits .................................................................................................... 3

II. Pursuant to 18 U.S. Code § 3584(a) and (b), the multiple terms of imprisonment imposed in this case may be run concurrently ............................................................... 3

III. Whether because of a policy disagreement with the child pornography guidelines or to otherwise achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a), imposition of a non-guidelines sentence is appropriate in this case. ................................ 6

IV. Issues affecting the calculation of the advisory guidelines range .......................... 8

    A. Commission of a sexual act or sexual contact ...................................... 8

    B. Conduct involving Victim 3 .................................................................. 9

    C. Pattern of activity enhancement for production counts..................... 10

    D. Summary............................................................................................. 11

V. Guidelines-application related reasons for variance................................................ 12

VI. As applied to Mr. Stephen, the Justice for Victims of Human Trafficking Act violates the guaranty of equal protection and due process in the Fifth Amendment, United States Constitution; and applying the statute to conduct that occurred before the statute was enacted violates the Ex Post Facto clause.................................................. 15

    1. Ex post facto claim............................................................................... 16

    2. Equal Protection claim ........................................................................ 17

VII. Conclusion.............................................................................................................. 18

## I. Potential Witnesses and Exhibits

### A. Witnesses

Roger Stephen (Greg's father)

Michelle Siegel (Greg's sister)

Roger Pimentel, consultant and co-author of request for variance

Dr. Mark Mills

John Tianforte (former associate with Barnstormers basketball) (tentative)

### B. Exhibits

A. Letters written on behalf of Greg Stevens

B. Psychiatric assessment by Dr. Mills

B-1. Dr. Mills' resume

C. Letter and transcript from California Coast University

C-1. Photographs

D. Static-2002R

E. Resume of Roger Pimentel

F. Statement to the Court by Greg Stevens

## II. Pursuant to 18 U.S. Code § 3584(a) and (b), the multiple terms of imprisonment imposed in this case may be run concurrently

U.S.S. G. § 5G1.1(a) provides that, "[i]f the application of the guidelines results in a sentence above the maximum authorized by statute for the offense of conviction, the statutory maximum shall be the guideline sentence."" *See e.g., United States v. Analla*, 975 F.2d 119, 128 (4th Cir. 1992).

Accordingly, because the maximum sentence for counts 1-5 is 30 years, the guideline maximum for those offenses is 360 months. For count 6, the statutory maximum is 10 years, so the guideline maximum is 120 months; and for count 7, the statutory maximum is 20 years, so the guideline maximum is 240 months.

The question is whether or to what extent consecutive sentences should be imposed. On one hand, U.S.S.G. § 5G1.2 provides that consecutive sentences may be required to impose the "total punishment." The relevant parts of this guideline are:

> (a) … the sentence to be imposed on a count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment, shall be determined by that statute and imposed independently.
>
> (b) For all counts not covered by subsection (a), the court shall determine the total punishment and shall impose that total punishment on each such count, *except to the extent otherwise required by law*. (emphasis added).
>
> (c) If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.
>
> (d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

However, pursuant to 18 U.S. Code § 3584(a), multiple terms of imprisonment imposed at the same time run *concurrently* unless the court orders that they are to run consecutively, to wit:

> (a) If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may

4

> run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. *Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively*. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently. (emphasis added).

And, according to § 3584(b), the factors set forth in 18 U.S.C. § 3553(a) must be considered when the Court determines whether to impose consecutive sentences, to wit:

> Factors To Be Considered in Imposing Concurrent or Consecutive Terms.— The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

In *United States v Joetzki*, 952 F2d 1090, 1098 (9th Cir. 1991), the Court explained that the multiple sentencing provisions of the Guidelines must be read in conjunction with the requirements of 18 U.S.C. § 3584; and, that § 3584(a) demands a specific and express order when sentences imposed at same time are to be served consecutively.

Mr. Stephen requests that this Court find the factors set forth in Chapter 3553(a) do not justify imposition of consecutive sentences; and in fact, they justify concurrent sentences of 240 months on counts 1-5, a concurrent sentence of 120 months on count 6, and a concurrent sentence of 240 months on count 7. The basis for this request is discussed below and, in more detail, in the companion motion for imposition of a sentence of 240 months in prison.

5

## III. Whether because of a policy disagreement with the child pornography guidelines or to otherwise achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a), imposition of a non-guidelines sentence is appropriate in this case.

There are many cases recognizing that a judge can impose a non-guidelines sentence because of a policy disagreement with the child pornography guidelines.

For instance, Judge Bennett found, in *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1091 (N.D. Iowa 2009) that a sentence in strict accordance with the advisory guideline for child pornography offenses would be at odds with the "parsimony provision" of the federal sentencing statute, 18 U.S.C. § 3553(a), which directs the court to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing.

*See also United States v. Henderson*, 649 F.3d 955, 963 (9th Cir. 2011) cited in *United States v. Newhouse*, 919 F. Supp. 2d 955, 966 (N.D. Iowa 2013) (holding that, "district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case."); and,

*United States v. Collins*, 828 F.3d 386, 389 (6th Cir. 2016) (noting plausibility of rejecting Guidelines sentencing ranges in child pornography cases based on policy disagreements), cited by *United States v. Anderson*, No. 18-1726, at *2 (8th Cir. Jan. 14, 2019); and,

*United States v. Price*, 775 F.3d 828, 840 (7th Cir. 2014 (upholding a below-Guidelines sentence as within the district court's discretion to vary "based on a policy disagreement," quoting *Spears v. United States*, 555 U.S. 261, 264 (2009)).

Some of the grounds for a policy disagreement with the child pornography guidelines are set forth in the following cases:

*United States v. Dorvee*, 616 F.3d 174, 185-88 (2d Cir. 2010) (recognizing the district courts' post-Booker authority to vary from the Guidelines solely on policy disagreement, and encouraging courts to take discretion seriously in fashioning sentences for child pornography defendants, and stating that U.S.S.G. § 2G2.2 is "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results"); and,

*United States v. Stone*, 575 F.3d 83, 97 (1st Cir. 2009) (expressing view that child pornography guidelines are harsher than necessary); and,

*United States v. Mallatt*, 4:13CR3005, at *23 n.5 (D. Neb. Nov. 27, 2013), noting that numerous district courts have determined that the Guidelines in child pornography cases are owed less deference than those for other offenses because the Guidelines for child pornography crimes are "largely the product of congressional directives, some of which the Sentencing Commission actively opposed, rather than Commission study and expertise."

Mr. Stephen's contention is that whether (1) because of a policy disagreement with the guidelines, or (2) absent a policy disagreement with the guidelines, in order to

7

comply with the statutory directive that judges impose a sentence sufficient but not greater than necessary to achieve the goals of sentencing as set forth in 18 U.S.C. § 3553(a), a sentence of 240 months in prison would be reasonable and proportional in his case. The basis for this assertion is discussed in greater detail in the companion motion for a variance to 240 months in prison.

## IV. Issues affecting the calculation of the advisory guidelines range

Although Defendant requests that the Court reject application of the child pornography guidelines as a matter of policy, Defendant did address the Presentence Investigation Report's calculation of the advisory guidelines range. [Supplemental response, Document #74, filed Jan. 25, 2019]. Mr. Stephen adopts by reference his objections in that document to the scoring of the advisory guidelines range. The main issues include the following.

### A. *Commission of a sexual act or sexual contact*
*Re Paragraphs 41, 49, 66, and 74*

These paragraphs pertain to victims in counts 1, 2, 4, and 5, respectively. A 2-level enhancement for the commission-of-a-sexual act or sexual-contact specific offense characteristic is recommended for each victim. Mr. Stephen's asserts that he did not, with respect to those counts, commit or solicit a sexual act or engage in or solicit sexual contact as defined in 18 U.S.S.G. § 2246(2) and (3), which is incorporated by reference in U.S.S.G. § 2G2.1(b)(2)(A) by Commentary, Application n. 2. The conduct involved in those counts, masturbation, is not a crime and it is not referenced in the statute's definition of sexual conduct or sexual act.

8

Mr. Stephen does not contest application of this enhancement with respect to that part of paragraph 57 (pertaining to Victim 3) that involves the photograph taken when the victim was 17. As discussed in more detail below, there are two separate offense conducts described in paragraph 57, and one of these (the photo taken in August of 2017) does involve sexual conduct but the other (the sexting done when the victim was in 7th grade) does not.

**B. Conduct involving Victim 3**

*Re Paragraphs 55 to 63*

Count 3 involves two separate instances of prohibited conduct.

First, there is the sexting conduct, which did involve use of a computer to solicit the images but did not involve sexual conduct or supervisory control. For this conduct, we believe, the offense level is 36.

Second, there is the taking of the photograph in August of 2017, which is factually distinct in time and place and circumstance from the sexting conduct. The conduct associated with the photograph did not involve misrepresentation of identity or the use of a computer to solicit; and the victim was 17 years old. Therefore, for this conduct, the offense level for this conduct is also 36.

Since the two offense levels are both 36 this should be the offense level for this count.

The defense asserts that there should be two separate offense levels calculated for this count because the Victim 3 count involves two entirely separate instances of

production of sexually explicit material.  Because the conduct is dissimilar for these two events and took place a much different times and places, conduct for one event is not relevant conduct for the other.

### C.  *Pattern of activity enhancement for production counts*
*Re Paragraph 84*

In the plea agreement, the defense agreed to the 5-level pattern of activity enhancement under U.S.S.G. § 2G2.2.  But, the guideline for the production counts (1 – 6) is § 2G2.1. The former includes a 5-level pattern of activity enhancement, the latter does not.  Therefore, the question is whether the absence of the pattern of activity enhancement in § 2G2.1, when it is found only in § 2G2.2, has significance.

One possible explanation is that § 2G2.1 has its own "built-in" pattern-of-activity type enhancement, specifically § 2G2.1(d)(1).  Under § 2G2.1(d)(1), a prosecutor can elect to trigger an offense-level enhancement where there is a pattern of conduct by charging multiple counts, as was done in this case. Or the prosecutor can elect to charge one count and seek a pattern-of-activity type enhancement under Chapter 4, specifically §4B1.5(b) (repetitious offenses).  But to avoid double counting and manipulation of the guidelines by the prosecutor's charging decision, one or the other of these enhancements may be applied, but not both.  Counsel does not believe this precise argument was addressed in *United States v. Fadl*, 498 F.3d 862 (8th Cir. 2007), where the Eighth Circuit held that the application of § 2G2.1(d)(1) and §4B1.5(b) was not double-counting because §2G2.1(d)(1) punished the exploitation of different minors and §4B1.5(b) punished the exploitation of those minors on multiple occasions.

10

### *D. Summary*

Mr. Stephen has no criminal record, so his Criminal History Category is I. If his total offense level is 42 or below, then the advisory guideline range will be less than life in prison. For counts 1 – 6, the PSIR calculates the offense level as being 38 prior to any increase for pattern of activity or multiple count adjustment. Mr. Stephen calculates the offense level for counts 1 – 6 as 36 for each count prior the increase from pattern of activity or multiple count adjustment. A table may help visualize his argument.

| Production offenses | Offense level - PSIR | Offense Level - Defendant | Reasons for difference |
|---|---|---|---|
| Count 1 | 38 | 36 | No sex act |
| Count 2 | 38 | 36 | No sex act |
| Count 3 | 40 | 36 | No sex act or supervisory control for conduct in 2012-2013; and victim was 17 and there was no misrepresentation for conduct in 2017 |
| Count 4 | 38 | 36 | No sex act |
| Count 5 | 38 | 36 | No sex act |
| Count 6 | 38 | 36 | No sex act |

Based on defendant's calculations, for counts 1 – 6, even if 5 levels are added for repeat offender and 4 more for multiple counts, the offense level would be 45, less

11

three levels for acceptance, resulting in a total offense level of 42. The corresponding guidelines offense range starts at 360 months.

## V. Guidelines-application related reasons for variance

The defendant's separate motion for variance focuses on the defendant's history and characteristics and the nature of the offenses. In addition, there are several reasons that the guidelines enhancements are disproportionately punitive, as follows:

1. Applying enhancements based on the number of incidents fails to account for the nature of the conduct. Just counting incidents leads to disproportionate results when the enhancement is divorced from the underlying conduct, especially when "production" involves non-coercive, non-commercial conduct without dissemination. A variance could take these factors into account.

2. Similarly, Mr. Stephen asserts that although he has pleaded to production counts, he was not the type of "producer" that the dangerous and repeat offender guideline is intended to cover. Specifically, there was no commercial aspect to his offense, and no dissemination. The victims and the world at large were unaware of his conduct. Although covered by an expansive interpretation of what is "production," the conduct by Mr. Stephen was at core more akin to invasion of privacy or receipt and possession of child pornography, which have lower statutory penalties and a lower guidelines base offense level.

12

3. Also relevant in terms of whether the Court should vary, is that that Chapter 4 enhancements are premised on the notion that the risk of recidivism is higher for repeat offenders. *See* Introductory Comment, Chapter 4, Part A ("Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.") While that may be true in general, researchers have concluded the risk of recidivism is less for offenders whose offense primarily involves an interest in child pornography. *See e.g.* Ellman, Ira Mark and Ellman, Tara, 'Frightening and High': The Frightening Sloppiness of the High Court's Sex Crime Statistics (June 8, 2015). This paper, hereafter referenced as "Sex Crime Statistics," is available at SSRN: http://ssrn.com/abstract=2616429. Relevant to the supposed justifications for the imposition of a special sentence for sex offenders, Ellman and Ellman cite statistics that low-risk sex offenders are indeed no more likely than other offenders to commit sex offenses. Sex Crime Statistics" at pp. 6, 7, fn. 17, 18. They also cited a study that found that found that 68% of the high-risk sex offenders committed no new offense 15 years after their release, and 95% of the low risk offenders were offense-free after 15 years. Sex Crime Statistics,", at page 6, fn. 16. In addition, Ellman and Ellman cited a study from the California prison system documenting that in 2003, of the sex offenders who did violate their terms of supervision, less than 2% of the violators committed a new sex offense. "Sex Crime Statistics," at page 6, fn. 13.

13

4. That Mr. Stephen's pleading guilty and accepting responsibility could have no effect on the guidelines sentencing range is a reason for variance. Even working with the PSIR's calculation of the offense levels, simply awarding Mr. Stephen 4 levels for "super-acceptance" would reduce the sentencing range to less than life in prison.

5. That U.S.S.G. § 4B1.5(a) sets the offense level at 37 even when the following aggravating circumstances are present – (1) the underlying offense carries a maximum sentence of life in prison and (2) the defendant has a prior conviction for a sex offense. Mr. Stephen's base offense level, as calculated in the draft PSIR, was 40 for Count 3 before the multiple-count adjustment. This base offense level exceeds § 4B1.5(a)'s offense-level 37 cap even though that guideline applies to more culpable or at worst equally culpable offenders. This is arguably grounds for a variance.

6. The prosecutor charged the case in a way to manipulate the guidelines by charging 5 different counts of production of child pornography, thereby triggering the maximum increase of 4 levels for multiple count adjustment.

7. The offenses of conviction in this case are obviously very serious crimes, and an offender convicted of these offenses deserves a significant prison sentence. But there are several mitigating factors in Mr. Stephen's case. For example, the use of force or violence would seriously aggravate the offense but force and violence is absent in this case. Having a prior conviction for a similar offense, this too would be an aggravating factor

14

that is absent in this case. Other mitigating factors are family support, gainful employment, being well-educated, no history of substance abuse, stable residence, no personality disorders apart from voyeurism, and no criminal history at all. All of these factors lend assurance that Mr. Stephen is not a risk to reoffend and are important in assessing what sentence would be proportional to the offense. These relevant facts associated with these factors are discussed in much more detail in the companion motion for variance.

8. Mr. Stephen is 43 years old. The life expectancy of a male age 43 in the United States, based on the Social Security actuarial table, is not quite 36 years. [https://www.ssa.gov/oact/STATS/table4c6.html]. However, the guidelines sentencing range, as calculated in the PSIR, is 2,160 months, or 180 years, which is exactly 5 times longer than Mr. Stephen's life expectancy. This illustrates how unreasonable the application of the sentencing guidelines would be in this case.

## VI. As applied to Mr. Stephen, the Justice for Victims of Human Trafficking Act violates the guaranty of equal protection and due process in the Fifth Amendment, United States Constitution; and applying the statute to conduct that occurred before the statute was enacted violates the Ex Post Facto clause.

*Re PSIR paragraph 147*

15

Case 1:18-cr-00031-CJW-MAR   Document 84   Filed 04/18/19   Page 15 of 19

### 1. Ex post facto claim

The statute in question is 18 U.S.C. § 3014. The statute imposes an "assessment" of $5,000.00 upon non-indigent persons convicted of sexual misconduct. The Act applies, "[b]eginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on September 30, 2021." Mr. Stephen asserts that it would violate the Ex Post Facto clause of the federal constitution to apply this Act to conduct that occurred prior to enactment of the statute.

The text of the statute does not claim that is should apply retroactively to conduct that occurred prior to its enactment. If it did, would run afoul of the protections in the Ex Post Facto clause of Art. I, § 9 of the United States Constitution. *See United States v Williams*, 128 F.3d 1239, 1241 (8th Cir. 1997) (stating restitution under the Mandatory Victim Restitution Act ("MVRA") is a form of punishment); *accord*, *United States v. Cunningham*, 866 F. Supp. 2d 1050, 1058 (S.D. Iowa 2012). The assessment imposed by § 3104 is no less a penalty than restitution. *See United States v. Bennett*, No. 98-1064, 1999 U.S. App. LEXIS 18140, at *4-5 (2d Cir. July 30, 1999). In *Bennett*, the defendant challenged the imposition of a $ 100 special assessment as a violation of the ex post facto clause of the United States Constitution. The government conceded that this was error because the offense conduct was completed before April 24, 1996, the date on which Congress increased the special to the district court with instructions to reduce the special assessment to $50.00.

Counts 1-5 allege conduct that occurred prior to the enactment of § 3104 and imposing the $5,000.00 assessment for those offenses would violate the Ex Post Facto clause.

### 2. Equal Protection claim

This Act also denies Mr. Stephen the guaranty of equal protection of the law. The argument is as follows.

The statute applies to some offenders and not to other similarly situated offenders based on when they are "convicted" of an offense, i.e. if they were convicted after the act was enacted in 2015 and before September of 2021.

It is well established that equal protection of the laws requires that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216, (1982)); accord *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir.1994), cert. denied, 513 U.S. 1185 (1995); *Moreland v. United States*, 968 F.2d 655, 660 (8th Cir.) (en banc),cert. denied, 506 U.S. 1028 (1992).  By making § 3014 applicable to only to offenses committed during about a six-year window, but not those before or after those dates, the legislature imposes different punishment upon otherwise identically situated defendants.

"Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, [courts] presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Higgins v. Carpenter*, 258

17

F.3d 797, 799 (8th Cir. 2001) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)). Mr. Stephen asserts that because the statute affects his liberty interests, it must be analyzed using a strict-scrutiny test. The liberty interest arises from the Fourteenth Amendment to the United States Constitution prohibits the United States from "depriving any person of life, liberty, or property without due process of law."

Mr. Stephen asserts that to experiment with ways of collecting money from criminal defendants, which is the apparent purpose of § 3104, is not a compelling state interest and therefore fails the strict scrutiny test.

## VII. Conclusion

Even if all of Mr. Stephen's objections to calculation of the advisory guidelines sentencing range are ruled upon favorably, the sentencing range will still be disproportionally harsh. He therefore asks the Court to either (1) reject the child pornography guidelines on policy grounds or, (2) to find that in this case a variance from the guidelines is necessary in this case to achieve a fair and just sentence of 240 months for counts 1-5 and 7, each count to be served concurrent with each other and concurrent with a 120 month sentence for count 6.

Respectfully submitted,

18

*Mark Meyer* (signature)

MARK C. MEYER AT0005269
425 2nd Street SE, Suite 1250
Cedar Rapids, Iowa 52401
(319) 365-7529
legalmail@markcmeyer.com


CO-COUNSEL WITH ATTORNEY MARK BROWN
FOR DEFENDANT


**CERTIFICATE OF SERVICE**

A copy of this document was served by ☐ mail, ☐ facsimile, ☐ hand-delivery ☒ electronic filing on this 4/18/2019 upon all counsel of record in this case.

*Mark Meyer* (signature)