IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No.  1:18-CR-00031 |
| | ) | |
| v. | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| GREGORY SCOTT STEPHEN, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the United States by its undersigned counsel, and provides the following memorandum for the sentencing in this matter.

## TABLE OF CONTENTS

I.  Introduction ........................................................................................................1

II.  Background & Sentencing Issues............................................................................2

III.  Enhancement for Sexual Contact for Counts 1, 2, 3, 4, and 5 ..................................3

IV.  Offense Level Computation for Count 3 .................................................................5

V.  Enhancement for Pattern of Activity Involving Prohibited Sexual Conduct............................9

VI.  Special Assessments for Counts 6 and 7 ...............................................................12

VII.  Appropriate Sentence in this Case.......................................................................13

VIII.  Conclusion ....................................................................................................22

## I.  Introduction

For at least the past decade, the Defendant, Gregory Scott Stephen, built an organization designed to feed him a steady, replenishing stream of victims. Victims who were eager to play under him, and over whom he exercised authority and control. The families of these victims

1

sought out Defendant, paid for his expertise and connections, and entrusted him with the safety and futures of their sons. Defendant used his positions as a founder and a coach for an elite youth basketball organization to access, manipulate, and groom these victims so he could sexually exploit them.

By the time he was caught in 2018, the number of victims exceeded 400. Defendant violated his victims in a multitude of ways—secretly recording them while they were naked, tricking them into sending sexually explicit images and videos by impersonating an interested minor female, and photographing himself touching victims' genitals while they were asleep.

Based on calculations pursuant to the United States Sentencing Guidelines (USSG), the advisory sentencing range is 2,160 months, or 180 years. A sentence of 180 years is necessary based on the nature and circumstance of the offense, the harm Defendant has caused the victims and the community, his level of dangerousness, and the need to avoid unwarranted sentencing disparities.

## II.  Background & Sentencing Issues

In a superseding indictment filed in June 2018, Defendant was charged with five counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) (Counts 1, 2, 3, 4, 5); one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) (Count 6); and one count of transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1) (Count Seven). (Dkt. 30.) Following the Court's denial of his motion to suppress evidence, Defendant conditionally pled guilty to all seven counts of the Superseding Indictment on October 18, 2018. (Dkt. 61.) Under a conditional plea agreement, Defendant

preserved his right to appeal the Court's denial of his motion to suppress evidence. (Dkt. 62.) On October 22, 2018, the Court formally accepted Defendant's guilty plea. (Dkt. 63.)

Sentencing is scheduled for May 2, 2019. The issues left to be resolved are: (1) application of the two-level enhancement pursuant to USSG §2G2.1(b)(2)(A) for sexual act or contact in Counts 1, 2, 3, 4, and 5; (2) the offense level computation for Count 3; (3) application of the five-level enhancement pursuant to USSG §4B1.5(b)(1) for pattern of activity involving prohibited sexual conduct; (4) special assessments for Counts 6 and 7; and (5) the appropriate sentence for Defendant. At this time, the government anticipates calling Special Agent Ryan Kedley with Iowa Division of Criminal Investigations. At this time, no victims have indicated to the government a desire to address the Court, nor have their victim impact statements read aloud at sentencing.

### III. Enhancement for Sexual Contact for Counts 1, 2, 3, 4, and 5

#### A. Legal Framework

Under USSG §2G2.1(b)(2)(A), a two-level enhancement is applicable if the offense involved the commission of a sexual act or contact. USSG §2G2.1(b)(2)(A). The commentary to the guideline instructs "sexual act" has the meaning given that term in 18 U.S.C. § 2246(2) and "sexual contact" has the meaning given that term in 18 U.S.C. § 2246(3). USSG §2G2.1 comment. (n.2). "Sexual act" means:

> (A)  contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

> (B)  contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

3

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246(2). "Sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

## B. Argument

Defendant asserts that the two-level enhancement for the commission of a sexual act or sexual contact is inapplicable for Counts 1, 2, 3, 4, and 5. Defendant reasons that he only solicited the victims in each count to record themselves with erect penises and self-masturbating, and that masturbation is not a crime and is not included in the definitions of "sexual act" or "sexual contact" set forth in the statute. However, because self-masturbation constitutes "sexual contact", the Defendant's argument is unavailing.

Three Courts of Appeal have addressed whether self-masturbation by either the defendant or a victim constitutes "sexual contact" for purposes of the USSG §2G2.1(b)(2)(A). All have found that it does. *See United States v. Shafer*, 573 F.3d 267, 272-74, 277-79) (6th Cir. 2009) (finding that "sexual contact" for purposes of applying USSG §2G2.1(b)(2)(A) enhancement included self-masturbation by the victim that was caused by the defendant); *see also United States v. Aldrich*, 566 F.3d 976, 978-90 (11th Cir. 2009) (finding that "sexual contact" for

4

purposes of applying USSG §2G2.1(b)(2)(A) enhancement included self-masturbation by the defendant); *United States v. Pawlowski*, 682 F.3d 205, 211-13 (3rd Cir. 2012) (same). The Court of Appeals for the Sixth Circuit relied on the plain meaning of the statutory language as well as the legislative history to conclude that "of any person" includes self-masturbation by the victim that was caused by the defendant. The Court focused on the difference in language between 18 U.S.C. § 2246(2), which defines "sexual act", in part, as "the intentional touching, not through the clothing, of the genitalia *of another person* . . .", and 18 U.S.C. § 2246(3), which defines "sexual contact," in part, as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks *of any person* . . ." *Id.* at 272-73. Accordingly, "sexual contact" includes self-masturbation that was caused by Defendant. As such, the two-level enhancement under USSG §2G2.1(b)(2)(A) is applicable for Counts 1, 2, 3, 4, and 5.

While the enhancement should be imposed for the reasons stated above, it is notable that, should the Court decline to apply the enhancement for all five production counts, and rule in the government's favor on the rest of the contested issues, the guideline range would remain life in prison.

### IV.  Offense Level Computation for Count 3

#### A.  Legal Framework

With respect to the consideration of relevant conduct by the Court, the Guidelines state:

> Unless otherwise specified . . . specific offense characteristics . . . shall be
> determined by all acts and omissions committed, aided, abetted, counseled,
> commanded, induced, procured, or willfully caused by the defendant . . . that

5

occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

USSG §1B1.3(a). In the plea agreement, the parties entered a relevant conduct stipulation that encompassed a broader expanse of conduct than the definition set forth in USSG §1B1.3(a). Specifically, the parties stipulated that "the relevant conduct in this case involves the exploitation of approximately 400 victims[.]" (Dkt. 62, para. 13(f).)

**B. Argument**

The United States Probation Office (USPO) properly performed one guideline calculation for Count Three and appropriately considered Defendant's abuse of Victim 3 in both 2011 or 2012 and 2017 as relevant conduct in determining specific offense characteristics for Count 3. Preliminarily, as the USPO points out, the plain language of USSG §1B1.3(a)(1)(A) includes both sets of conduct in the definition of relevant conduct. (PSR, para. 55.) Moreover, under USSG §1B1.3(a)(2), relevant conduct includes, solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above *that were part of the same course of conduct or common scheme or plan as the offense of conviction*. *See United States v. Hodge*, 805 F.3d 675, 679 (6th Cir. 2015)(emphasis added). Defendant's conduct of producing and possessing child pornography involving Victim 3 when the victim was 12 years old and then later producing more pornographic images of the same minor victim is clearly part of the same course of conduct and common scheme and plan.

However, if the Court finds that the 2017 conduct falls outside of the relevant conduct for

6

Count Three under the definition set forth in USSG §1B1.3(a), it is clear that the parties stipulated a broader expanse of criminal activity constitutes relevant conduct for this case than the definition set forth in USSG §1B1.3(a). (Dkt. 62, para. 13(f).) As such, the USPO appropriately relied on the 2011 and 2012 conduct in applying the two-level enhancements for age (USSG §2G2.1(b)(1)(B)), sexual contact (USSG §2G2.1(b)(1)(A)), custody, care, or supervisory control (USSG §2G2.1(b)(5)),[1] and use of a computer (USSG §2G2.1(b)(6)), for an adjusted offense level of 40.

Defendant's suggestion that the Court should implement two guideline calculations for Count 3 lacks basis in Guidelines and is contradicted by the relevant conduct stipulation in the plea agreement. It appears that, in suggesting the calculation of multiple guideline ranges for Count 3, Defendant is relying on USSG §2G2.1(d). However, Defendant is arguing for a separate guideline calculation for each incident of abuse against a single victim. USSG §2G2.1(d) does not provide for separate guideline calculations for each incident of abuse; rather, it provides for separate guideline calculations for each victim. Moreover, in the plea agreement, the parties stipulated that the "the relevant conduct in this case involves the exploitation of approximately 400 victims" and that "USSG Chapter Three, Part D shall be applied as if the exploitation of each minor had been contained in a separate count of conviction." (Dkt. 62, para. 13(f).) This

---

[1] To the extent Defendant argues for a variance based on application of the custody, care, or supervisory control enhancement pursuant to USSG §2G2.1(b)(5), such an argument should be rejected. Defendant argues, in part, that "[v]ictim 3 was 17 years old, physically mature for his age, standing about 6 and one-half feet tall. (Dkt. 74, p. 4.) This argument is unpersuasive. The victim's height and physically maturity are irrelevant to whether Defendant was in a position of responsibility for Victim 3. Victim 3 was a minor. He traveled with Defendant, his basketball coach, from Iowa to Las Vegas, Nevada. Victim 3 slept in a hotel room with Defendant, and no other coaches or players slept in that room. Undoubtedly, Defendant was in a position of custody, care, or supervisory control over Victim 3.

means that, for purposes of grouping in this case, one count = one victim, as opposed to one count = one incident of abuse of one victim, as argued by Defendant.[2] As such, Defendant's suggestion of two guideline calculations for Count 3 should be rejected, and the Court should rely on the calculation set forth in the PSR.

In the event the Court rejects the government's argument that the relevant conduct for Count Three encompasses both the conduct from 2011 or 2012 and 2017, the government suggests the Court calculate the guidelines for Count Three based solely on the 2011 or 2012 conduct. That calculation would be as follows:

| *2011-2012 Conduct* | |
|---|---|
| Base Offense Level: | 32 |
| §2G2.1(b)(1)(B): | +2 |
| §2G2.1(b)(2)(A): | +2 |
| §2G2.1(b)(6): | +2 |
| Subtotal: | 38 |

Such a calculation would have no effect on the ultimate guideline range in this case. For the multiple count adjustment, the greater of the adjusted base offense levels (referenced in the PSR at para. 81) would be 38. Four levels would be added pursuant to USSG §3D1.4 for a combined adjusted offense level of 42. Five levels would be added pursuant to USSG §4B1.5(b)(1), and three levels subtracted pursuant to USSG §3E1.1, for a total offense level of 44. Pursuant to Chapter 5, Part A, comment. (n.2), the total offense level would be treated as a 43, which is the

---

[2] As is addressed *infra*, although the parties agreed that each of the 400 victims would be treated as a separate count of conviction, the USPO did not apply the grouping rules in this manner. They USPO likely refrained from doing so because: (1) the largest increase in offense level available under USSG §3D1.4 is five; and (2) with counting only the five victims of the five production counts, Defendant had already received the maximum five-level increase. (PSR, para. 80.)

same total offense level reached under the current guideline calculations in the PSR.

**V. Enhancement for Pattern of Activity Involving Prohibited Sexual Conduct**

   **A. Legal Framework**

Under USSG §4B1.5(b)(1), five offense levels shall be added to the offense level already determined under Chapters Two and Three if a defendant is convicted of a covered sex crime[3], is not a career offender under USSG §4B1.1, and engaged in a pattern of activity involving prohibited sexual conduct. USSG §4B1.5(b)(1). The production of child pornography constitutes "prohibited sexual conduct". USSG §4B1.4 comment. (n.4(A)). With respect to "pattern of activity", a defendant does so "if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." USSG §4B1.1 comment. (n.4(B)(i)). To qualify as an "occasion" of prohibited sexual conduct under USSG §4B1.5(b)(1), the "occasion" need not to have occurred during the course of the instant offense and need not to have resulted in a conviction. USSG §4B1.1 comment. (n.4(B)(ii)).

   **B. Argument**

Defendant asserts that, because the special instruction under USSG §2G2.1(d)(1)—which relates to grouping of offenses involving the exploitation of one minor—could be applied in this case, the Court's application the "pattern of activity" enhancement under USSG §4B1.5(b)(1) would result in double-counting. Defendant points to no guideline provision nor any case law barring application of both USSG §2G2.1(d)(1) and USSG §4B1.5(b)(1). Even so, because only

---

[3] A conviction under 18 U.S.C. § 2251(a) is a "covered sex crime." USSG §4B1.5 comment. (n.2).

one of these provisions and not both was applied in this case, the Defendant's argument is without merit.

Contrary to Defendant's contention, the special instruction under USSG §2G2.1(d)(1) was not applied in calculating the guideline range in this case. USSG §2G2.1(d)(1) states:

> If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction.

It is true that the plea agreement addresses the special instruction in USSG §2G2.1(d)(1). Specifically, the parties agreed that:

> *Treatment of uncharged conduct*, the defendant understands that the relevant conduct in this case involves the exploitation of approximately 400 victims and that USSG Chapter Three, Part D shall be applied as if the exploitation of each minor had been contained in a separate count of conviction;

(Dkt. 62, para. 13(f).) However, in calculating the guideline range in this case, the USPO calculated only five groups, which were based on five counts of production, as opposed to calculating 400 or more groups based on "the exploitation of each minor" as authorized by USSG §2G2.1(d)(1) and agreed to by the parties in the plea agreement. (PSR, para. 80.) Defendant seems to acknowledge as much in his objections, stating that "the multiple-count adjustment appears to be properly scored[.]" (Dkt. 74, p. 4.) Accordingly, any argument by Defendant that application of both the special instruction under USSG §2G2.1(d)(1) and the "pattern of activity" enhancement under USSG §4B1.5(b)(1) constitutes double-counting fails, as only one of these provisions and not both was applied in this case.

To the extent Defendant contends that application of the "pattern of activity"

enhancement over-represents his criminal conduct such that a downward variance is warranted, such an argument borders on frivolousness. One would be hard-pressed to find a case more appropriate than the Defendant's for application of this enhancement. It is uncontested that, for at least the last decade, Defendant has been producing various forms of child pornography, and that he victimized more than 400 minors. To be eligible for the "pattern of activity" enhancement, Defendant need to have only engaged in prohibited sexual conduct with a minor on two occasions. USSG §4B1.1 comment. (n.4(B)(i)). To that end, the five-level increase drastically fails to encompass the vastness of Defendant's "pattern of activity" in this case.

Moreover, Defendant's argument that he is being punished more harshly than a defendant with a prior sex conviction is based on an incorrect reading of the guidelines. In making this argument, Defendant claims that defendants with prior sex offense convictions are subject to a "cap" of 37. This is wrong. The offense level of 37 applies under subsection (a) only if 37 is greater than the offense level determined under Chapters Two and Three. USSG § 4B1.1(a)(1)(A). Furthermore, subsections (a) and (b) of USSG §4B1.1 address two wholly distinct groups of offenders. Subsection (a) addresses defendants who have a prior sex offense conviction; subsection (b) addresses defendant who do not have a prior sex offense conviction but who have engaged in a pattern of activity involving prohibited sexual conduct. USSG §4B1.1. For application of the enhancement under subsection (a), defendants need not to have engaged in any pattern of activity; they simply need to have had one prior conviction for a sex offense. Accordingly, Defendant's variance arguments based on application for the "pattern of activity" enhancement should be rejected.

11

## VI. Special Assessments for Counts 6 and 7

### A. Legal Framework

Pursuant to 18 U.S.C. § 3014, the Court "shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under . . . (3) chapter 110 (relating to sexual exploitation and other abuse of children)." 18 U.S.C. § 3014(3). The applicable time frame for this statute is from the date of enactment of the Justice for Victims of Trafficking Act of 2015 (JVTA), which was May 29, 2015, until September 20, 2021. This $5,000 assessment is to be imposed in addition to any assessment imposed under 18 U.S.C. § 3013.

### B. Argument

It is clear that the Court is required to impose the JVTA assessments for Counts 6 and 7. The conduct to which Defendant pleaded guilty in Counts 6 and 7 occurred after May 29, 2015, and there is no claim that Defendant is indigent. In fact, Defendant has a net worth of $113,133, owed two houses prior to his arrest, and has continued to receive a salary for over a year (as a loan) from his former employer, Stephen Motors, while he was detained. (PSR, paras. 117, 119-20.) Moreover, the offenses of possession of child pornography and transportation of child pornography clearly fall within the offenses covered by § 3014(a)(3), in that they are violations of chapter 110 that relate to the sexual exploitation of children. Contrary to Defendant's argument, it is of no matter that the Defendant is not convicted of any human trafficking conduct, as the statute makes clear the assessments are not limited to cases involving human trafficking. As such, the Court must impose the $5,000 for Counts Six and Seven.

12

## VII. Appropriate Sentence

The Guideline calculations for the Defendant are as follows:

| Group One | Group Two | Group Three |
|---|---|---|
| Sexual Exploitation of a Minor (Victim 1) | Sexual Exploitation of a Minor (Victim 2) | Sexual Exploitation of a Minor (Victim 3) |
| Base Offense Level: 32<br>§2G2.1(b)(1)(B):  +2<br>§2G2.1(b)(2)(A):  +2<br>§2G2.1(b)(6):  +2<br>Subtotal:  38 | Base Offense Level: 32<br>§2G2.1(b)(1)(B):  +2<br>§2G2.1(b)(2)(A):  +2<br>§2G2.1(b)(6):  +2<br>Subtotal:  38 | Base Offense Level: 32<br>§2G2.1(b)(1)(B):  +2<br>§2G2.1(b)(2)(A):  +2<br>§2G2.1(b)(5):  +2<br>§2G2.1(b)(6):  +2<br>Subtotal:  40 |

| Group Four | Group Five |
|---|---|
| Sexual Exploitation of a Minor (Victim 4) | Sexual Exploitation of a Minor (Victim 5) |
| Base Offense Level: 32<br>§2G2.1(b)(1)(B):  +2<br>§2G2.1(b)(2)(A):  +2<br>§2G2.1(b)(6):  +2<br>Subtotal:  38 | Base Offense Level: 32<br>§2G2.1(b)(1)(B):  +2<br>§2G2.1(b)(2)(A):  +2<br>§2G2.1(b)(6):  +2<br>Subtotal:  38 |

### Multiple Count Adjustments

| Group# | Adjusted Offense Level | Unit |
|---|---|---|
| 1 | 38 | 1.0 |
| 2 | 38 | 1.0 |
| 3 | 40 | 1.0 |
| 4 | 38 | 1.0 |
| 5 | 38 | 1.0 |
| Total Number of Units: | | 5.0 |

### Determination of Overall Base Offense Level

| | |
|---|---|
| Greater of the Adjusted Offense Levels Above: | 40 |
| Increase in Offense Level: | +4 |
| §4B1.5(b)(1) | +5 |
| §3E.1 | -3 |
| Total Offense Level | 46 |
| Chapter 5, Part A (comment n. 2) Cap | 43 |

13

### *Advisory Guideline Range*

Total Offense Level 43; Criminal History Category I = Range of 2,160 months (180 years)

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;

2. the need for the sentence to imposed -

   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   B. to afford adequate deterrence to criminal conduct;

   C. to protect the public from further crimes of the defendant; and

   D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

2. the kinds of sentences available;

3. the guideline sentencing range;

4. any pertinent policy statement;

5. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

6. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). Also, pursuant to USSG § 5G11.2(d), "if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively . . . to the extent necessary to produce a combined sentence equal to the total punishment." This provision applies because none

14

of the offenses of conviction carries a life sentence. Therefore, consecutive sentences should be imposed.

The guideline range of imprisonment of 180 years is the only sufficient sentence for the Defendant in this case. The guideline sentence serves the objectives set forth in Section 3553(a). The record is devoid of any reason for the Court to vary below the guideline range.

A. **Defendant is a "hands on" child sex abuser who operated for decades.** Despite Defendant's best efforts to categorize himself as a voyeur who is mainly a consumer of child pornographer, and, therefore, somehow less dangerous, the record unequivocally establishes he is a longtime child molester and producer of child pornography. Since he was in his 20s, Defendant cultivated a lifestyle centered on access to, and grooming of, victims and their families. The record shows that Defendant used his various organizations as a hunting ground for victims. Specifically, Defendant's involvement with youth basketball teams clearly track his sexual exploitation of minors. In 2003, Defendant founded the Iowa Mavericks Basketball Club, a group that gave him a legitimate reason to spend 50+ hours a week with 60 to 65 young, male basketball players. (PSR, para. 114.) Not coincidentally, the earliest created date for a folder containing child pornography was August 3, 2003. (PSR, para. 19.) From that point forward until 2018, Defendant ingratiated himself in the youth basketball community, cofounding the Iowa Barnstormers Youth Basketball Organization in 2005. (PSR, para. 114.) While Defendant was paid a salary with the Mavericks, he forewent money with the Barnstormers, spending 50 to 60 hours a week personally coaching two basketball teams and being present at all practices where the 70 to 80 middle school and high school boys played. *Id.* Unsurprisingly, the latest created date for a file folder containing child

15

pornography was January 18, 2018, or a few weeks before the Defendant was arrested the for the instant offense.

After Defendant gained the trust of his players and their parents by putting in time on the court, Defendant sought out opportunities to spend time with his players away from their families. Defendant had players spend the night as his residences (PSR, para. 9), and invited the boys to attend tournaments and professional basketball games out of town where he would share a bed with a victim in hotel rooms. (PSR, paras. 11, 15, 20A, 29, 30). This conduct spans the entirety of Defendant's involvement with youth basketball organizations.

A victim reported that, in 1999, Defendant touched the victim's penis while Defendant and the victim were sharing a bed in a hotel room. (PSR, para. 20A; Gov. Sent. Ex. 1.) The victim was age 14 or so at the time. *Id.* This incident occurred when Defendant was age 24 or so, attending college, and coaching youth basketball. *Id.* Another victim reported that, 17 years later, in 2016, he was sharing a bed with the Defendant in a hotel room when he awakened to what he believed to be the Defendant masturbating as he lay behind the victim. (PSR, para. 29.) Another victim reported that, 2018, he was sharing a bed with Defendant in a hotel room when he awakened and believed Defendant had been touching the victim's genitalia. (Gov. Sent. Ex. 2.) The victim was 13 years old and Defendant was 42 years old. In addition to these victims, Defendant sexually abused at least 11 other victims by using their bodies to create child pornography. (PSR, para. 20.) Defendant photographed the victims while they were sleeping with their pants pulled down and genitalia exposed, and, in some instances, Defendant touched their genitalia with his hands or placed his mouth near their genitalia. (PSR, para. 20.)

16

It is important to note that, it is impossible to know how many victims Defendant touched during his coaching tenure. In this case, the government relied on the child pornography the Defendant produced while he touched the victims and victims who reported instances of touching by Defendant for which there were no corresponding images. Due to shame, embarrassment, and a variety of other reasons, many victims who fall into the second category may not have reported the abuse to law enforcement. What is clear from the record, however, is that the Defendant is, undoubtedly, a repeat, "hands-on" sexual abuser who has been molesting victims since he was in his 20s.

**B. The scale of the offense is large and not accounted for by the guidelines.** This investigation began when law enforcement came into possession of a single covert recording device that had been found in Defendant's bathroom containing images of disrobing minors. (PSR, para. 11.) As the investigation progressed, the true scale of Defendant's child pornography activities was revealed. With respect to covert recording devices, law enforcement recovered a total of four from Defendant's Monticello residence. Three resembled the covert recording device that was initially recovered; the fourth was designed to look like, and operate as, a mountable bath towel hook. (PSR, para. 13.) From the Defendant's Delhi residence, law enforcement recovered another recording device, this one designed to look like a smoke detector, with the mount located directly above the toilet. (PSR, para. 14.) In total, law enforcement seized six covert recording devices Defendant had used, or was planning to use, to create child pornography.

Moreover, the Defendant possessed a large amount of self-made child pornography, which was located on the LaCie hard drive seized from his Monticello residence. (PSR, para. 16.) The

Defendant had 440 file folders, organized by the last and then first names of the victims. *Id.* The victims included current and former players of Defendant, as well as friends of those players whom Defendant had never met. *Id.* Each of those 440 folders contained visual depictions of nude minor boys displaying their genitalia and many involved masturbation by the minor boys. *Id.*

Since the Defendant produced several types of child pornography, some folders had only one type whereas others had all three. (PSR, para. 17.) The most prevalent kind was images or videos of minor males displaying their genitalia and/or masturbating. *Id.* The Defendant tricked the victims into sending him these images and videos by pretending to be an interested minor female pursing the victims online. *Id.* The second type was covert recordings of the victims while they were in bathrooms. *Id.* The third type consisted of images the Defendant took of unconscious victims with their pants pulled down and their genitalia exposed. In some of these images, Defendant was touching, or had his hand or face near, the victim's genitalia. *Id.* Law enforcement also located on the LaCie hard drive file folders for the two teenaged female personae Defendant adopted while online to trick victims into sending him images and videos of themselves. (PSR, para. 21.) These folders contained nude and clothed photographs of teenaged females, as well as a video of what appeared to be a teenaged female masturbating, with no face visible. *Id.*

The numerous recording devices, female personae, as well as the large quantity and varied types of child pornography demonstrate that Defendant's drive to sexually abuse victims and produce child pornography is powerful. He went to great lengths of planning and preparation, and spent a lot of time communicating with victims, manipulating victims, and recording victims. In some cases, when Defendant obtained an image of a victim masturbating, that simply was not

18

enough. He went on to further sexually abuse that victim by recording him while he was in the bathroom, or touching and photographing his exposed genitalia while he was asleep.

As referenced *supra*, the guideline calculations fail to account for: (1) the number of victims; and (2) multiple instances of abuse for certain victims. Even if the exploitation of each minor had been treated as a separate count of conviction, the largest offense level increase Defendant could have received is what he already got in this case: five. USSG §3D1.4. Additionally, it is true Defendant received the five-level enhancement for the "pattern of activity" enhancement. However, to establish a pattern under that enhancement, Defendant need only to have engaged in prohibited sexual conduct with a minor on two occasions. USSG §4B1.1 comment. (n.4(B)(i)). In no way do the enhancements in Defendant's guideline calculations account for the hundreds of other victims in this case, or the multiple instances of abuse of some victims. As such, a sentence below the guideline range would undoubtedly result in unwarranted sentencing disparities.

**C. The harm caused to the victims is incalculable.** This case has shattered the worlds of many of Defendant's victims. Until this investigation occurred, most victims were unaware that Defendant had sexually abused them and/or used them to produce child pornography. They, along with their families, were forced to confront and accept being victimized by Defendant, who was a person they had trusted. They had to endure the media attention garnered by this case and the negative connotation that being a Maverick or Barnstormer now carries. As explained in their impact statements, victims expressed that this process has been painful, humiliating, and terrifying. Being victimized by Defendant has affected their relationships with their families and friends; it

19

has affected their academic, athletic, and professional pursuits; and, perhaps most poignantly, it has affected how they feel about themselves.

Defendant suggests that the harm in this case is mitigated because the "hands-on" victims were asleep and most others were unaware that they had been abused. As pointed out by Dr. Anna Carol Salter, Ph.D., lack of awareness of touching or use for child pornography does not lessen the impact on the victim. (Gov. Sent. Ex. 3 and 4.) When adults molest children, it affects the children's sense of trust in others, and basic trust is a cornerstone of mental health. (Gov. Sent. Ex. 4.) According to Dr. Salter, "betrayal trauma", has extremely harmful consequences that can last for life. It is not possible to forecast how being sexually abused as a child by a trusted adult will affect each of Defendant's victims.

   **D. Defendant is a danger to the community and requires incapacitation.** The nature and circumstances of the offense as well as the history and characteristics of the Defendant as discussed *supra* demonstrate he is a danger to any community in which he might reside. Defense counsel fundamentally misunderstands the dangerousness and harmfulness of Defendant's conduct. They state:

> [D]efendant was not the type of "producer" that the dangerous and repeat offender guideline is intended to cover. Specifically, there was no commercial aspect to his offense, and no dissemination. The victims and the world at large were unaware of his conduct. Although covered by the expansive interpretation if what is "production," the conduct by [Defendant] was at core more akin to receipt or possession of child pornography, which have lower statutory penalties and a lower guideline base offense level.

(Dkt. 74, p.5-6).) Defendant is child sex abuser who has admitted to touching the genitalia of 13 victims. He vigorously and tenaciously used several deceptive methods to produce various forms

20

of child pornography for decades, victimizing more than 400 boys. His motive for a life working with youth basketball organizations is now transparent: he wanted access to victims so that he could assert the power to destroy their innocence. That he did not make money off of the child pornography, or give it to others, are not factors that make a person like Defendant less dangerous. In fact, his decision to keep his activity secret assured his continued success at victimizing more and more minors without getting caught. He has shown that he will go to great lengths of manipulation, deception, betrayal, and abuse to satisfy his need for power and control over young boys and his own sexual gratification.

## VIII. Conclusion.

WHEREFORE, the government respectfully requests the Court impose a sentence a guideline sentence of 180 years' imprisonment.

Respectfully Submitted,

Marc Krickbaum
United States Attorney

By:     /s/ Amy Jennings
        /s/ Clifford R. Cronk III
Clifford D. Cronk III
Amy Jennings
Assistant United States Attorneys
U.S. Courthouse Annex, 2nd Floor
110 E. Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: cliff.cronk@usdoj.gov
        amy.jennings2@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on April 18, 2019, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the attorneys of record and U.S. Probation by:

___ U.S. Mail   ____ Fax   _____ Hand Delivery   _X_ ECF/Electronic filing   __ Email

UNITED STATES ATTORNEY

By:    /s/  Amy Jennings/Cliff Cronk
        Amy Jennings/ Cliff Cronk

22