IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:18-CR-00031 |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT'S SENTENCING |
| GREGORY SCOTT STEPHEN, | ) | MEMORANDUM; OPPOSITION TO |
| | ) | REQUEST FOR VARIANCE |
| Defendant. | ) | |

COMES NOW the United States by its undersigned counsel, and provides the following response to Defendant's sentencing memorandum (Dkt. 84) and opposition to Defendant's request for variance (Dkt. 90).

**I.  Defendant's Proffered Assessment Tool Was Improperly Scored and Is Not a Valid Predictor of Defendant's Risk of Re-Offending.**

Defendant has tendered Exhibit D, a Static-2002R. It is a sex offender risk assessment tool. Apparently this tool was scored by Dr. Pimentel. For several reasons, the Government asserts that this device was not scored properly and is not a valid predictor of Defendant's risk of re-offending.

In response to Exhibit D, the Government submits the following:

**Exhibit 6:** Excerpt from: Salter, A. *Predators: Pedophiles, Rapists, and Other Sex Offenders: Who They Are, How They Operate, and How We Can Protect Our Children.* New York: Basic Books. Second edition (to be released in the fall of 2019).

**Exhibit 7:** Interpretation of the Static 99R by Dr. Salter

**Exhibit 8:** Copy of First Static 2002R provided to the Government by the defense

**Exhibit 9:** Redacted Email from Dr. Salter to Defense Counsel noting problems with the initial Static 2002R provided to the Government

**Exhibit 10:** Email from David Thornton to Dr. Salter regarding scoring of the Static 2002R

1

**Exhibit 11:** Current Static 2002R assessment coding form

Dr. Salter has decades of experience dealing with sex offenders and their victims. She advises that the STATIC 99R and the STATIC 2002R are tools that measure the risk of recidivism where recidivism equates to re-arrest (the risk of getting caught) not the risk of re-offense. She writes:

> "No instruments are able to measure the risk of reoffending, because there is no access to offenders who continue to offend but who do not get caught. It has been thought then that charges or convictions would have to suffice as a proxy for offending. It has been noted that we do not know how many uncharged offenses the average offender has." (Gov. Ex. 7, p. 1)

It is well-documented that a lack of reporting is the primary reason sex offenders do not get caught. *See* K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11 Psychology, Pub. Pol'y & L. 1, 194-226 (American Psychological Association, 2005); USSC Report 2012, *supra* note 1, at note 49 (Ch. 7, 180). Courts too have recognized this problem. In *United States v. McIlrath*, 512 F.3d 421 (7th Cir. 2008), a case involving a defendant who plead guilty to the crime of traveling across state lines to have sex with a minor, Judge Posner stated:

> "Estimates of recidivism are bound to be too low when one is dealing with underreported crimes such as sex offenses. Static 99 treats as a recidivist only someone who is convicted of a further sex offense, but the recidivism concern is with someone who commits a further offense, whether or not he is caught—yet if he is not caught, his subsequent crime does not affect the data on which the Static 99 calibrations are based.

*Id*. at 425. The Court in *McIlrath* elaborated that the district court is "entitled to discount not only the estimate of a 9 to 13 percent probability of recidivism but also the unsubstantiated claim that the range could be reduced by counseling; the efficacy of treatment programs for sex offenders

2

has not been demonstrated." *Id.*

A nationwide survey of adolescents conducted by the U.S. Department of Justice revealed that "[m]ost sexual assaults (86%)… went unreported." U.S. Dep't of Justice, Office of Justice Programs National Institute of Justice (NIJ), *Research in Brief: Youth Victimization: Prevalence and Implications* (Apr. 2003), *available at* https://www.ncjrs.gov/pdffiles1/nij/194972.pdf. It cannot be contested that an extremely low percentage of victims of sexual abuse report sexual assaults. Dr. Salter notes some of the reasons for this; some that are present in this case.

According to Dr. Salter, victims are reluctant to report the offender when the perpetrator has a status position that the victim does not want to disturb. *See* Gov. Ex. 7. When the perpetrator is in a position of control or authority over a victim, or the victim relies in part on the perpetrator for something, victims are reluctant to report sexual abuse. In this case, several victims were aware of the sexual abuse but none reported it to anyone. As Defendant points out in his letter to the Court, all of the victims were in positions where reporting this would have jeopardized their status as potential college scholarship recipients and even their ability to play basketball in college. The extraordinary investment by their parents and their own efforts to play for Defendant created a strong incentive on the part of the victims to keep quiet about his assaultive behaviors. Defendant knew this as he was able to repeatedly violate the young players without consequence.

Another reason victims fail to report sexual abuse is the utter embarrassment, humiliation, and shame associated with being abused. In this case, victim impact statements reveal the degree of humiliation and trauma associated with their victimization at the hands of Defendant. It is no wonder the victims in this case never reported Defendant for his criminal abuse.

3

Some victims do not report a sex offense because the victims do not expect to be believed. *See* Gov. Ex. 7, p. 2. Like priests and Boy Scout leaders, a basketball coach with years of success and experience is a formidable figure to identify as a sexual predator. Understanding that denial and ridicule are the consequence, victims will elect to keep silent and be on their guard. That is what happened in this case, time and time again. The power imbalance between Defendant and each of the young victims in this case suggests the victims understood no one would believe a claim of sexual assault.

A more obvious reason victims fail to report sexual abuse is when victims are somehow or in some way unaware of the offenses. This could be due to the victim being too young to recount the incident or being incapacitated in some other way, such as when the assault occurs while the victim is sleeping. Here, Defendant has admitted that he provided medicine to one victim that made him drowsy. (Plea Agreement, para. 9(k)) According to the evidence, the victim was asleep when Defendant pulled down his underwear and touched his penis. *Id.* Other victims have reported sexual contact by Defendant while sharing a bed with him and then being awakened by Defendant touching them.

Concerning risk assessment, Dr. Salter continues:

> " . . . the offender may have few charges and convictions in his past but still be at high risk to offend. On the other hand, offenders with little protection, with few social skills, and who do not choose their victims wisely will have a number of charges in the past, and Static-99R no doubt is correct that they will have more in the figure. However, it is not getting caught that makes someone high risk to reoffend. (Gov. Ex. 7, p. 3)

Defendant's criminal history includes years of taking young players away from their homes on

4

basketball excursions and then sleeping in the same bed with them. It includes multiple incidents of Defendant touching the genitals of these boys and even recording himself committing these acts. It includes year after year of posing as a minor female to attract pre-pubescent boys to masturbate for him so he could secretly record the activity. None of this activity is addressed in the STATIC 2002R under <u>PERSISTENT SEXUAL OFFENDING</u> or under <u>GENERAL CRIMINALITY</u>. The Court should completely disregard the use of this device as a risk assessment tool.

In addition to the problems with the device, the Government questions the scoring of the STATIC 2002R in this case.[1] First, the initial coding form provided was incomplete as it only contained the first 9 items.[2] *See* Gov. Ex. 8. Scores were placed improperly in the gray areas of the form. *See* Gov. Ex. 8. Dr. Salter further noted that the year of release, that being 17 years from now, when Defendant is 60 years old, is not likely to be useful to the Court. *See* Gov. Ex. 9. After Dr. Salter alerted the defense to the errors in the first STATIC 2002R, a revised STATIC 2002R was provided to the Government noting only a change to Item 7. The scoring of <u>DEVIANT SEXUAL INTERESTS</u> in the first STATIC 2002R submitted to the Government, Item 7, was scored as a "1." This scoring was changed in the second submission to a "0." *Compare* Gov. Ex. 8 with Gov. Ex. 11.

---

[1] Stephen's Exhibit "D", the STATIC 2002R scored for Stephen, is an older form, that has not been in use since 2016. The later form translates the numerical score to levels. *See* http://www.static99.org – select the Static 2002 tab and then select Static-2002R Coding Form (2016).

[2] Counsel for Defendant, Mark Meyer, explained that he didn't notice that the second page of the two-page form was missing when he forwarded the first STATIC 2002R.

5

But there are other problems with the scoring. Looking at Item 1 of the revised STATIC 2002R submitted by Defendant (Gov. Ex. 11), because Defendant is 43 years old, he should be scored as "0" not "-2." In the category of PERSISTENCE OF SEXUAL OFFENDING, the SUBSCORE should be "0" not "-2."

Items 5 and 7, in the second STATIC 2002R are not properly scored. Dr. Salter consulted with David Thornton Ph.D., who along with R. Karl Hanson Ph.D. created the STATIC 99R and the STATIC 2002R, to review the scoring of Item 5. *See* Gov. Ex. 10. Dr. Thornton advised that if a sex offender has admitted a non-contact offense and is awaiting sentencing, Item 5 should be scored; this should be a "1", not a "0". Item 7 involving young, unrelated victims is also mis-scored as it also should be scored as a "1." The SUBSCORE for the section on DEVIANT SEXUAL INTERESTS should be a "3", not "0."

Under RELATIONSHIP TO VICTIMS, Item 9, the issue of stranger victims should be scored as "1", not a "0" as numerous victims of Defendant's online efforts to produce videos of boys masturbating did not know Defendant. The SUBSCORE for the section on RELATIONSHIP TO VICTIMS should be a "2", not a "0."

The correct risk assessment tally for Defendant, based upon this assessment tool is "5." Using the proper risk assessment conversion, this translates to Level IVa, "Above Average Risk."[3]

Most importantly, the risk assessment device is flawed because it completely discounts the long history of sexual crimes committed by Defendant and scores him as if he is a first-offender.

---

[3] Even assuming the age of projected release is scored properly as a "-2", the final tally of "3" is squarely in Level III which is "Average Risk" not the low risk Stephen would have the Court believe.

The record shows that Defendant has been violating young males since at least 2003 and continued to do so until his arrest.

## II. The Record is Devoid of Factors that Mitigate Defendant's Conduct.

Defendant's sentencing memorandum and variance motion are littered with references to "mitigating" factors for this case. For example, Defendant argues he deserves a variance because:

- when he produced child pornography, it was "non-coercive, non-commercial conduct without dissemination" (Dkt. 84, p. 12);

- "[t]he victims and the world at large were unaware of his conduct[]" and his crime "was at core more akin to invasion of privacy or receipt and possession of child pornography", *Id.;*

- Defendant did not use force or violence, *Id.* at 14;

- Defendant lacks criminal history, *Id.* at 14-15;

Contrary to Defendant's assertion, the above are not mitigating factors. Under the USSG §2G2.1, factors such as dissemination and force, coercion or violence are aggravating factors that warrant an increase in base offense level. *See* §2G2.1(b)(3) (two level increase if Defendant knowingly distributed child pornography); §2G2.1(b)(4)(A) (four level increase if offense involved material that portrays sadistic or masochistic conduct or other depictions of violence). As such, the absence in this case of dissemination and/or force, coercion, and violence does not mean Defendant should get a downward variance; rather, Defendant should not receive enhancements for those factors. And he has not.

Moreover, nothing about the absence of dissemination and/or force, coercion or violence makes Defendant's actual offense conduct any less horrific or any less harmful to the victims. While it is true that many offenders share their collection of child pornography with others and

7

typically trade images, there are clear and obvious reasons that Defendant did not. Defendant could not risk letting anyone know that he was recording his players. If so much as a single pornographic image he produced had been discovered, Defendant could have been discovered. So, for more than a decade he made sure no one else saw the images. His carelessness occurred when he left the hidden recording device in his bathroom for someone else to find.

Defendant had placed himself in a position where he had near immediate access to a steady supply of target victims for many, many years. Defendant's occupation as a coach of young boys is not by happenstance nor is it benevolent. Defendant could have elected to coach college players or taken positions where he was not in daily contact with minors. Instead, Defendant worked to be in this position. By doing so, he did not need anyone to send him additional images from somewhere else. Defendant continually produced more images of different minor boys year after year.

It is clear that these offenses are driven by demented personal and sexual desires, not by the desire for money or financial benefit. Defendant could not have derived any gratification from selling or disseminating the images. The absence of dissemination is not a mitigating factor.

As to Defendant's claim of mitigation because his offense did not involve force, coercion or violence, Dr. Salter pointed out that molesting victims when they are vulnerable and unable to protect themselves is considered to be the use of force in the field of child sexual abuse and is also a risk factor. (Gov. Ex. 4, p. 3.) In any event, Defendant was able to operate for as long as he did precisely because he did not coerce the victims or use violence against them. If he had, that would have increased the likelihood of players recognizing and reporting the abuse. Instead, he pretended

8

to be a trusted adult whose only interest in them was to help them achieve their goals. Defendant's actions were insidious, secretive, and manipulative.

Defendant is also incorrect in his assertion that the harm caused his victims was lessened because they and the world were largely unaware of Defendant's abuse of them. Again, the victims' lack of knowledge was not an effort on Defendant's part to prevent them from being hurt. It was part of Defendant's design for not getting caught. If the victims did not know they were being abused, they could not report him. Nonetheless, even if Defendant was trying to minimize the harm to victims, Dr. Salter explained that sex offenders are aware that, despite their best efforts, children may discover they have been molested. (Gov. Sent. Ex. 4, p. 3.) When children and teenagers are abused by adults whom they trust, it significantly impacts their sense of trust in others, and that basic trust is a cornerstone of mental health. *Id.* One of the many possible consequences Defendant's victims could experience is "betrayal trauma", which has extremely harmful effects that can last throughout life. *Id.*

Similarly, Defendant's lack of criminal history does nothing to assuage the seriousness of his offense conduct or lessen the harm to the victims. Considering the circumstances, describing Defendant as a person with a total lack of criminal history is quite misleading. Without question, he has never been convicted of a crime. But by his own admission, he has committed "hands on" sexual abuse of 13 victims and produced child pornography featuring over 400 victims. As such, Defendant has been committing serious crimes for a long time; he just has never been caught. Nonetheless, Defendant did benefit from his lack of prior criminal convictions in the sentencing calculus; he received zero criminal history points and is in the lowest criminal history category.

9

Lastly, Defendant claims that his education, employment and family support are mitigating factors. These factors are actually aggravating factors. They do not lessen the degree of culpability associated with these offenses. A well-educated, fully employed individual with family support has no excuse for molesting children or producing vast amounts of child pornography.

### III. Based on Defendant's Offense of Conviction and Egregious Conduct, Policy Disagreement with Child Pornography Guidelines is Not Appropriate Reason for Below-Guideline Sentence

Defendant urges the Court to find that the child pornography guidelines are too high and a product of Congressional directives as opposed to empirical analysis, and, on that basis, reject the guideline range of life, or 2,180 months' imprisonment. The government does not dispute that some courts have recognized a policy disagreement and varied downward on that basis. However, the Court should reject Defendant's argument because, due to Defendant's offense of conviction and egregious conduct, this case does not fall within the policy disagreement identified by Defendant as a basis for variance.

First, this case involves different *conduct* than that which is at the center of the policy disagreements referred to by Defendant. The policy disagreements cited by Defendant centers on the conduct of possession and trafficking in child pornography as opposed to the production of child pornography. To be sure, all of the cases cited by Defendant in his brief, with the exception of one,[4] deal with trafficking charges as opposed to the production charges. (Dkt. 84, p. 6-7.) However, in this case, Defendant pleaded guilty to production, possession, and transportation

---

4 *United States v. Price*, 775 F.3d 828, 840 (7th Cir. 2014) involved production charges.
10

charges, and his range is driven by the production guidelines. Furthermore, the egregious nature of Defendant's conduct differentiates him from defendants who are at the heart of the policy disagreement. In Defendant's lead case on this issue, *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009), there was not a single allegation, let alone admission, that the defendant engaged in "hands-on" sexual abuse. 599 F.Supp.2d at 1093-94. To the contrary, in this case, Defendant has admitted to producing child pornography featuring more than 400 different victims and committing "hands on" offenses against 13 of those victims. The egregiousness of Defendant's conduct renders the policy disagreement argument useless to him.

Additionally, the policy disagreement that Defendant is trying to leverage is focused on the *guideline* for trafficking offenses, USSG §2G2.2, as opposed to the guideline for production, USSG §2G2.1. In *Beiermann*, Judge Bennett found that USSG §2G2.2 was entitled to less deference than other guidelines and also categorically rejected it. Judge Bennett made no such analysis of, nor findings regarding, USSG §2G2.1. Because the policy disagreement cited by Defendant concerns a different guideline than the one at issue here, his variance argument should be rejected.

Moreover, other sections of the Guidelines that address crimes similar to that engaged in by Defendant treat such conduct as seriously as USSG §2G2.1. For example, USSG §2A3.1 deals with aggravated sexual abuse, in violation of 18 U.S.C. § 2241, and sexual abuse, in violation of 18 U.S.C. § 2242. Pursuant to USSG §2A3.1, the base offense level for a defendant who violates 18 U.S.C. § 2241(c), which concerns the sexual abuse of children, is 38. For all other violations of 18 U.S.C. §§ 2241 and 2242, the base offense level is 30. By comparison, the base offense level

11

under the applicable guideline in this case, USSG §2G2.1, is 32. Accordingly, other sections of the Guidelines that are outside of the policy disagreement pointed to by Defendant treat his conduct as seriously as the child pornography production guidelines.

A somewhat related argument raised by Defendant is that, through its charging decisions, the government "manipulate[d]" the guidelines to obtain a harsher than necessary sentence. (Dkt. 84, p. 14.) Defendant takes issue with the charging of five production counts for five separate victims. *Id.* He claims the government's decision unfairly triggered the maximum four-level increase under USSG §3D1.4. *Id.*

The Defendant's argument is without any factual or legal basis. Because the Defendant used more than 400 victims to produce child pornography, the government could have charged many more than five counts of production. As such, any claim that the government overcharged this case is frivolous. Moreover, it is true that four levels is the maximum increase under USSG §3D1.4. Thus, it does not matter if the government charged five counts of production or 300; the increase under USSG §3D1.4 would still be four levels. Rather than demonstrating manipulation on the part of the government, this fact supports the government's argument that the guideline range fails to adequately encompass the scope of Defendant's conduct.

### IV. Imposition of the Special Assessment Under the Justice for Victims of Trafficking Act Is Lawful.

Defendant's Equal Protection argument, though not adequately developed, is a challenge to the increase in assessments for numerous offenders, including Chapter 110 violators, during the limited time identified in the statute. Persons convicted of the enumerated crimes are not a

12

suspect class. *See United States v. Smith*, 818 F.2d 687, 691 (9th Cir. 1987) (involving $25 assessment fort misdemeanor offenses) citing *Upshaw v. McNamara*, 435 F.2d 1188, 1190 (1st Cir.1970); *McGarvey v. District of Columbia*, 468 F.Supp. 687, 690 (D.D.C.1979); *cf. Doe v. Edgar*, 721 F.2d 619, 622 (7th Cir.1983) (offenders twice convicted of driving under the influence not suspect class). Defendant does not claim any discriminatory class affected by the penalty assessment provisions of 18 U.S.C. § 3014. To be successful in his equal protection challenge, Defendant must show that the imposition of a fixed assessment is not rationally related to a legitimate government interest. *Lyng v. Castillo*, 477 U.S. 635, 106 S.Ct. 2727, 2729-30, 91 L.Ed.2d 527 (1986).

Here, the assessment is to be used to award grants or enhance victims' programming. 18 U.S.C. § 3014(e)(1). This assessment "is consonant with the concept of equal protection embodied in the Due Process Clause of the Fifth Amendment if there is "some 'rational basis' for the statutory distinctions made . . . or . . . they 'have some relevance to the purpose for which the classification is made.' " *Lewis v. United States*, 445 U.S. 55, 65 (1980) citing *Marshall v. United States*, 414 U.S. 417, 422 (1974) (citations omitted). The monetary assessment to be used for victim programming is certainly a legitimate governmental interest. Congress reasonably could have increased the assessment for defendants who commit the enumerated crimes in 18 U.S.C. § 3014 for this purpose. Nothing in the constitution impairs the power of Congress to legislate in this manner.

13

## V. Conclusion

Based on the foregoing, the government respectfully requests that the Court reject Defendant's request for a downward variance and impose a guideline sentence of 180 years' imprisonment.

Respectfully Submitted,

Marc Krickbaum
United States Attorney

By:  /s/ Amy Jennings
 /s/ Clifford R. Cronk III
Clifford D. Cronk III
Amy Jennings
Assistant United States Attorneys
U.S. Courthouse Annex, 2nd Floor
110 E. Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: cliff.cronk@usdoj.gov
   amy.jennings2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2019, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the attorneys of record and U.S. Probation by:

___ U.S. Mail   ____ Fax   _____ Hand Delivery   _X_ ECF/Electronic filing   __ Email

UNITED STATES ATTORNEY

By:  /s/  Amy Jennings/Cliff Cronk
     Amy Jennings/ Cliff Cronk

14